(83 App. Div. 76.)

## FOOT v. PITT.

(Supreme Court, Appellate Division, Second Department.   May 28, 1903.)

1. LIBEL—PROCURING LEGISLATION FOR PERSONAL BENEFIT.

An article charging one with endeavoring to procure legislation relieving him of a sewer assessment, and imposing the cost of building the sewer for his benefit on the city, is not libelous, though characterizing his conduct as selfish, such endeavor not being unlawful.

Appeal from Special Term, Westchester County.

Action by James D. Foot against William R. Pitt. From an interlocutory judgment overruling a demurrer to the complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action, defendant appeals. Reversed.

The action is for libel, and the publication complained of was as follows:

"New Rochelle, Mar. 6th, 1901.

"To the Editor of The Paragraph—Dear Sir: I notice that Mr. James D. Foot, the enterprising and public-spirited citizen of 'Sunken Meadow Lane,' has been to Albany to urge the Governor to forward the bill for the appointment of a special commission to build a new sewer in front of his property, and reports that he has every reason to believe that the measure will be passed. It is about time for our citizens to know why this action is taken, and what it means. In order that they may properly understand the movement, the reader must know that Mr. Foot wants a sewer built for him without paying the legal assessment of $1.70 per foot front, which every other property holder has been compelled to pay where sewers have been laid, and wants his share paid for by the general taxpayer. That is his object, first, last, and all the time. And he goes to Albany to ask the Governor to compel the city to provide him and his commission with money to contract the work, engage and pay outside engineers, inspectors, and superintendents to do this one piece of work under his personal direction, making all this an extra charge and expense against the city without the consent of the voters and taxpayers, or the supervision of the city officers whose business it is under the law to do it. Meanwhile the city is fully equipped with competent men, whose services are being paid for by the city, and who, under the law, are the ones authorized to build sewers, and whose experience and profession makes them fully as competent to do this work as Mr. Foot and his pet commission could possibly be. But Mr. Foot asks that all these be set aside, and that a new law be enacted, in order that he may avoid the payment of his assessment. When Mr. Foot talks in public he takes no pains to conceal the fact that he is very well blessed with this world's goods. Would it not be well for him to consider others who are not so fortunate? He may not know that many humble property holders have paid their assessments for sewers when it was a hardship to do so, but he now desires these same men to again put their hands deep down in their pockets, and help to pay for his sewer in their share of the general tax which will be necessary to pay for this work. If this pet scheme of this charitable citizen were for the benefit of the general public, there would be some excuse for it; but it must be remembered that the only section to be benefited is that in the immediate vicinity of Mr. Foot's residence. Mr. Foot claims that he has applied to the proper city authorities in this matter, and cannot get relief; and would have you believe that the city government is unwilling to provide the district with the necessary sewer or drain, while the opposite is true. The records will show that the proper officers have never opposed the measure, but have always been ready to proceed in accordance with the law and under the powers given by the new city charter, which provides for just such cases; and during the two years or more that Mr. Foot has been carrying on his personal war many taxpayers in all parts of the city have petitioned for sewers, and had them built, and have cheerfully paid their share of the expense. The law says that when petitioned by a majority of the property

holders the common council shall proceed to grant such relief, but each property owner would have to pay his share, not exceeding $1.70 per foot. Mr. Foot knows this perfectly well, but that is not what he wants, and he does not intend to apply for it in that way. If no other good comes of this, Mr. Foot's trip to Albany will help to pay the dividends of the New York Central Railroad, and will also give him an opportunity to make flamboyant reports to his friends of the great deeds he has done, and exhibit the skins of the mountain lions and Albany tigers he has captured, with all the necessary flourishes and big I's thrown in. If Mr. Foot succeeds in his measure, his saving might be as much as two hundred dollars, but the loss to the city would be very many thousands. Let Mr. Foot be fair, and show his willingness to pay his share of this strictly local improvement, and not demand that the taxpayer of Quaker Ridge who has neither interest nor benefit shall be compelled to pay for it. By all means let him have his favorite sewer, and may it become a sweet and useful accessory to Residence Park. But there is no reason for his building a drain on the pocket of every taxpayer from Davenport's Neck to Cooper's Corners.

"Quaker Ridge Tax Payer."

The complaint contained no allegation of special damage. The demurrer was overruled at the Special Term, and the defendant appeals.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

John W. Boothby, for appellant.
J. A. Young, for respondent.

WILLARD BARTLETT, J. The only question presented by this appeal is whether the publication of which the plaintiff complains is libelous per se. In my opinion, the language, when considered in its natural and ordinary meaning, is not defamatory, and will not sustain an action for libel in the absence of an allegation of special damage. It does not charge the plaintiff with having done anything which he had not a legal right to do. The gravamen of the publication is that the plaintiff has endeavored to procure the enactment of a law which will relieve him of a sewer assessment, and impose the cost of building a sewer for his benefit upon the taxpayers generally in the city of New Rochelle. Any citizen who sees fit to do so may lawfully endeavor to procure such legislation. His conduct in so doing involves no moral turpitude, and the most unfavorable view that can be taken of it is that which is implied in the article in question—that it is a selfish proceeding, and that the promoter is actuated by selfish motives. This characterization of the purpose of the plaintiff, however, does not bring the publication within any recognized definition of a libel.

The authorities are numerous to the effect that it is not libelous to charge a man with doing that which he may do lawfully. In Bennett v. Williamson, 4 Sandf. 60, it was held by the Superior Court of the City of New York that it is not libelous to charge a man with having pleaded the statute of limitations, when there was no statement that he interposed the plea dishonestly. In People v. Jerome, 1 Mich. 142, the plaintiff was a druggist, and complained of a publication in these words:

"The above druggist in the city of Detroit refusing to contribute his mite with his fellow merchants for watering Jefferson avenue, I have concluded

to water said avenue in front of Pierre Teller's store for the week ending June 27th, 1846."

The Michigan Supreme Court held that this was not a libel, there being no obligation resting upon the druggist to join in the furtherance of the project for watering the street. In Homer v. Engelhardt, 117 Mass. 539, the Supreme Judicial Court of Massachusetts held that it was not libelous to publish of a man that, "to get rid of a just claim in court, he set up as, a defense the existing prohibitory liquor law." The court said:

"This publication does not charge that the plaintiff falsely, or even unsuccessfully, set up as a defense the existing prohibitory law. The gist of the charge is simply that he did set up such a defense. The plaintiff having the right to make this defense, it, is not libelous to publish the statement that he had done so."

In Goldberger v. Philadelphia Grocer Pub. Co. (C. C.) 42 Fed. 42, it was adjudged that a publication was not libelous per se which charged that plaintiff was not actuated by patriotism or love of his guild in soliciting subscriptions for a world's fair from the tradesmen in his line of business, but that he was. actuated by a desire to earn a salary of $2.50 per day. Judge Shipman said that the action of the society which employed plaintiff and the action of the plaintiff himself was legal and proper, and, while the article was a sneer at the plaintiff, it said nothing which could properly dishonor or degrade or injure him in the estimation of his acquaintances or the public, or cause him to suffer loss in property, character, business, or in his social relations. In Urban v. Helmick, 15 Wash. 155, 45 Pac. 747, the publication alleged to be libelous charged a hotel proprietor with being a "hog," because he would not trade at home, and build up the home trade and his own town as much as possible, but sent to another city for supplies. This was held not to be libelous per se, the court saying that it was not libelous per se to accuse one of being deficient in some quality which the law does not require him, as a good citizen, to possess. These cases, and many others that might be cited, are opposed to the contention of the plaintiff that the publication under consideration here is defamatory in the sense contemplated by ·the law of libel.

The interlocutory judgment should be reversed, and the demurrer sustained.

Interlocutory judgment reversed, with costs, and demurrer sustained, with costs. All concur.

