WILLIAM S. BENNET, Appellant, *v.* COMMERCIAL ADVERTISER ASSOCIATION, Respondent.

Libel — newspaper article making accusations against a public official showing him unworthy of public trust — when such articles, if false, are libelous.

1. The libel law has never been confined to charges of illegality or law-breaking. Any false accusation which dishonors or discredits a man in the estimate of the public or his friends and acquaintances or has a reasonable tendency so to do is libelous, and hence a newspaper article may be libelous which does not charge a crime but makes accusations against a public official which would show him unworthy of public trust and a betrayer of civic confidence.

2. Where a newspaper charged plaintiff with serving the financial interests of a former client by the betrayal of his public duties, by saying that, while in Congress, plaintiff served a contractor, his former client; that, while he was paid to represent his constituents and to attend to the business of the nation, he was devoting his time to the interests of his former client; and that to accomplish this service he used slippery and underhanded methods and slipped a " joker " in the interest of his client into the sundry civil bill, such charges against a public official, if false, are libelous, since they not only tend to but should disgrace him in the community and drive him from official life. (*Foot* v. *Pitt*, 83 App. Div. 76, distinguished.)

*Bennet* v. *Commercial Advertiser Assn.*, 191 App. Div. 900, reversed.

(Argued November 17, 1920; decided December 7, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 13, 1920, affirming a judgment in favor of defendant entered upon an order of Special Term granting defendant's motion for judgment upon the pleadings and directing a dismissal of the complaint.

*Nathan Ballin, William M. K. Olcott* and *Walter E. Ernst* for appellant. The general tenor of the publications complained of is libelous as tending to expose the plaintiff to public disgrace, ridicule and obloquy by false statements of material facts. (*Triggs* v. *Sun Printing & Pub. Assn.,* 179 N. Y. 144; *Levey* v. *Brooklyn Union Publishing Co.,* 65 Misc. Rep. 373; 137 App. Div. 947; 202 N. Y. 555; *D'Altomonte* v. *N. Y. Herald Co.,* 154 App. Div. 453; 208 N. Y. 596; *Morey* v. *Morning Journal Association,* 123 N. Y. 207; *Snyder* v. *New York Press Co.,* 137 App. Div. 291; *Van Heusen* v. *Argenteau,* 194 N. Y. 309; *O'Connell* v. *Press Publishing Co.,* 214 N. Y. 352.) To charge a public officer falsely with actions exposing him to public ridicule constitutes libel. (*Hoey* v. *New York Times Co.,* 138 App. Div. 149; *Cohalan* v. *Press Publishing Co.,* 148 App. Div. 89; 212 N. Y. 344; *Lunn* v. *Littauer,* 187 App. Div. 808; *Randall* v. *Evening News Assn.,* 79 Mich. 266; *Sellars* v. *Collier,* 151 Mass. 50; *Brown* v. *Harrington,* 208 Mass. 600.)

*Walter H. Pollak, Ruth I. Wilson* and *Maurice R. Roche* for respondent. The articles sued upon are not libelous. (*Hotchkiss* v. *Oliphant,* 2 Hill, 510; *Van Heusen* v. *Argenteau,* 194 N. Y. 309; *Walsh* v. *Pulitzer Co.,* 250 Mo. 142; *Barr* v. *P. T. Pub. Co.,* 27 R. I. 101; *Crawford* v. *Barnes,* 118 N. C. 912; *Duffy* v. *N. Y. Eve. Post Co.,* 109 App. Div. 471; *Arnold* v. *Ingram,* 151 Wis. 438; *Sellars* v. *Collier,* 151 Mass. 50; *Greenwood* v. *Coffey,* 26 Neb. 449; *Shaw* v. *Crandon Printing Co.,* 154 Wis. 601.)

CRANE, J.   The defendant, taking a sentence from the case of *Foot* v. *Pitt* (83 App. Div. 76), has succeeded in establishing that the complaint in this action does not set forth a libel.   The sentence is: " The authorities are numerous to the effect that it is not libelous to charge a man with doing that which he may do lawfully."

As applicable to the facts of the case this was a correct statement of the law.   The publication charged that a property owner had gone to Albany to urge the passage of a bill for the construction of a sewer in front of his premises, actuated by a desire to relieve himself from a local assessment.   To take this sentence, however, of Judge BARTLETT's from its setting and use it as a general rule of law applicable to all publications must appear upon a moment's reflection contrary to well-settled principles.

The libel law has never been confined to charges of illegality or law-breaking.   Any false accusation which dishonors or discredits a man in the estimate of the public or his friends and acquaintances or has a reasonable tendency so to do is libelous.   In *Triggs* v. *Sun Printing & Pub. Assn.* (179 N. Y. 144) a libel was stated to be a written or printed statement or article published of or concerning another which is false and tends to injure his reputation and thereby expose him to public hatred, contempt, scorn, obloquy or shame.

The plaintiff in this case, William S. Bennet, was a representative in congress from the twenty-third district of the state of New York.   In the summer and fall of 1916 and during Bennet's campaign for re-election the defendant in its paper, known as *The Globe and Commercial Advertiser,* published various articles regarding Bennet's actions as congressman in Washington which tended to discredit him with his constituency and to disgrace him in the eyes of the public.   They are set forth in fifteen different causes of action alleged in the complaint.   It is unnecessary to give them here in full, ·owing to their great length.   For the purposes of this

opinion references will later be made to those portions which are considered to be clearly libelous.

The defendant having answered, a motion was made for judgment upon the pleadings, which was granted at Special Term and the complaint dismissed as not stating a cause of action. The Appellate Division affirmed the order of dismissal, one of the justices dissenting.

The charges, in substance, are that William S. Bennet, an attorney and counselor at law, in the state of New York, had been, prior to his election to congress, attorney for Hudgins & Dumas, who had a contract for feeding the immigrants at Ellis Island; that Bennet, while in congress, inserted a joker in the sundry civil bill requiring the continuance of a privately operated commissary system on Ellis Island; that he did this in the interest of his former clients, and not for the public good. His actions, in this matter, it was charged, were not as a representative of the people, but were for the interest of a private party, his former client, who would make huge gains by reason of these efforts.

A few quotations are necessary and will be taken from the various causes of action without specifying them by number as the whole complaint has been deemed bad.

All we desire to do in this opinion is to state wherein we think the plaintiff has been libeled, assuming the charges to be false.

" Several years ago United States Senator Burton of Kansas was prosecuted for using his official position in favor of the interests of a client. Upon conviction he served a penal term in St. Louis.   *   *   *

" It is doubtful if Congressman Bennet is open to legal prosecution. Hudgins, the Ellis Island food contractor, says in a statement published today by the *Times:* ' Mr. Bennet never acted as attorney for me or my firm except upon two occasions during his retirement from congress.'   *   *   *

" Mr. Bennet seems to have full confidence that he is

indictment-proof and is at full liberty to act in behalf of his former client as he might be expected to act if his former client were his present client.    *   *   *

"He celebrates his return by using his power to get the adoption of an appropriation bill 'rider'   *   *   * under circumstances that suggest that when he is out of congress Hudgins, his former client, will be ungrateful if he does not once more give Mr. Bennett employment.    *   *   *

"Word comes from Washington that it is possible to undo the work of Representative William S. Bennet, who inserted a joker in the sundry civil bill requiring the continuance of the privately operated commissary system on Ellis Island.    *   *   *

"Congressman Bennet, who has been the attorney for the food contractor at Ellis Island, and who jockeyed through a rider to an appropriation bill that forbids Commissioner Howe to end the practice of giving a contractor a monopoly right to make huge profits out of the food that arriving immigrants must buy from him, is smarting under his exposure.    *   *   *

"Mr. Howe does not think it just or right that Bennet's former client should make large sums out of immigrants.    *   *   *

"Whereupon Congressman Bennet, who has been the attorney for the food contractor, secured the attachment of a 'rider' to an appropriation bill forbidding the reform. The case speaks for itself. It is generally agreed that a man who has been the attorney for a concern and then goes to Congress and becomes the open champion of its pecuniary interest is not the right sort of congressman.    *   *   *

"Strange that he is inflamed against giving unfortunates a chance, while so little sensitive about championing the cause of a contractor whose money he has received.    *   *   *

"When the nature of the 'joker' was discovered and it became known Mr. Bennet was working for a former client, Mr. Bennet felt it necessary to attack Mr. Howe. * * *

"William S. Bennet, M. C., slips joker into the sundry civil bill. * * *

"It (this column) calls attention to the fact that Mr. Bennet, while paid to represent his constituents in congress and to attend to the business of the nation, was really devoting much of his time to the interest of Hudgins & Dumas, food contractors at Ellis Island."

Referring to Mr. Bennet's appearance for Hudgins & Dumas before the department of labor the paper says:

"This was after Mr. Bennet had asked the Department of Labor to be 'as liberal as possible' to Hudgins & Dumas, and this request was made while Mr. Bennet was a member of Congress, paid to represent the people of the Twenty-Third District, and not Hudgins & Dumas, food contractors at Ellis Island."

Again we find this printed of the plaintiff:

"Mr. Bennet is a disgrace to his constituency and to New York. He should be whipped out of public life by the scorn of all decent men. He has sufficiently shown the sort he is. To be the attorney for the food contractor and then as congressman to serve that contractor — nothing more need be said."

There is much more in these articles as alleged in the complaint than is here given, but sufficient has been quoted to show that the defendant charged the plaintiff with serving the financial interests of a former client by the betrayal of his public duties. It distinctly says that while in congress he served the contractor, his former client. That while he was paid to represent his constituents and to attend to the business of the nation he was devoting his time to the interests of Hudgins & Dumas, his former clients. To accomplish this service, it is said that he used slippery methods, underhanded,

not frank and open.   He is charged with having slipped a joker into the sundry civil bill.   A joker is defined by Webster's New International Dictionary as follows:   "A clause that is ambiguous or apparently immaterial inserted in a legislative bill to render it inoperative or uncertain in some respect without arousing opposition at the time of its passage."

In other words, a joker is what the defendant said it was, slipping something through without causing comment or arousing suspicion.   It indicates underhanded methods instead of those which are open and honest.

Such charges, as these quoted, against a public official, if false, are libelous.   They not only tend to, but should disgrace him in the community and drive him from official life.

It may be fairly said of a man who has been the attorney for a concern and then goes to Congress and becomes the open champion of its ·pecuniary interests that he is not the right sort of congressman.   It is this very opinion among decent men that makes libelous a false charge that a congressman did such a thing.   The defendant says that Bennet should be scorned of men because of what it said about him.   Because such acts are contemptuous, to falsely print them is a libel.

It is quite evident from the wording of the articles, and it is openly stated by the counsel for the respondent, that the defendant considered itself free from libel when it stopped this side of charging Bennet with being the attorney for Hudgins & Dumas at the same time he was a congressman.   This would have been a crime under sections 112, 113 and 114 of the Criminal Code of the United States, if while such attorney he used his office for his clients' benefit.

In view of what we have above stated we trust it will clearly appear that an article may be libelous which does not charge a crime but makes accusations, as in this instance, against a public official, which would show

him unworthy of public trust and a betrayer of civic confidence.

The judgments should be reversed and motion for judgment on the pleadings denied, with costs in all courts.

HISCOCK, Ch. J., COLLIN, HOGAN, POUND and ANDREWS, JJ., concur; CARDOZO, J., not voting.

Judgments reversed, etc.