JOHN M. TANZER, Respondent, *v.* THE CROWLEY PUBLISHING CORPORATION, Appellant.

Fourth Department, January 24, 1934.

*James A. McTiernan* [*Richard B. Conley* of counsel], for the appellant.

*James A. Evans*, for the respondent.

THOMPSON, J.   This is an appeal from an order denying defendant's motion to dismiss plaintiff's complaint in libel, upon the ground that it does not state facts sufficient to constitute a cause of action, and the controlling question is whether or not the publication sued upon is libelous *per se*.

Plaintiff was the mayor of the city of Little Falls from January 1, 1928, to December 31, 1931.   After his term of office had expired, and on March 1, 1932, defendant published an article in which it charged in substance that it was a matter of common knowledge that plaintiff's only reason for appointing the city attorney was to protect one Casler, the appointee's client, who eight years previously, which was before plaintiff became mayor, had filed a "hand picked assessment roll," according to Casler's testimony before a State Tax Commissioner, "made in a boasting manner, he believing at that time that he had done a smart thing," which "caused a riot."   The article continues to recite that further proof of this belief was the fact that the city attorney did not call Casler in the Central litigation as a witness for the city to have him tell why he gave the railroad company the big reduction in taxes that was revealed shortly after he filed his assessment roll on the 1st of March, 1924.   Other alleged charges against plaintiff shown in the article are so indefinite and illusory as to fall far short of compliance with the rule that provides that, in order to constitute a libel, the charge must be clear and specific.   In our view the language used in the article is not libelous, but at the most consists of comment and criticism of a public official, which falls within the limit of the privilege of a newspaper to print and carry in the public interest and welfare.   (*Gardner* v. *Home Life Publications, Inc.*, 237 App. Div. 200; *Foley* v. *Press Publishing Co.*, 226 id. 535; *McAvoy* v. *Press Publishing Co.*, 114 id. 540, 542, 545.)   The pleader has attempted to interpret the article into

a libelous publication by suggestive innuendoes and extrinsic facts. It is fundamental that the rule in such cases does not permit of any addition or change in the text or content of the article (*Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y. 95, 104; *Hays* v. *American Defense Society*, 252 id. 266; Rules Civ. Prac. rule 96), and that where innuendoes or extrinsic facts are necessary to show that a statement is libelous special damages must be alleged. (*Sydney* v. *Macfadden Newspaper Publishing Corp.*, 215 App. Div. 653; *Samson United Corp.* v. *Dover Mfg. Co.*, 233 id. 155.) We fail to see that the suggestive innuendoes or extrinsic matters render the publication defamatory. One who holds public office must expect criticism. It may be captious, ill-timed and without foundation in fact, but, outside of a clear charge of corruption or gross incompetence holding one up to disgrace and contumely, there is no libel. (*Mattice* v. *Wilcox*, 147 N. Y. 624.) Even an imputation of corrupt or dishonorable motive will be justified as fair comment if it is " an inference which a fair-minded man might reasonably draw from such facts." (Gatley Libel & Slander, 383.) We find no words here charging incompetency, corrupt or dishonorable conduct, or tending to injure plaintiff's reputation, or exposing him to public hatred, contempt, scorn, obloquy or shame. (*Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144, 153.)

The intent of the article, although composed in a temper that might lead one to read into it more serious charges than the language permits of, is to criticise the city government, it being the obvious opinion of the writer that the railroad assessment had been reduced too far; that other assessments had been raised too high; that laws had been disregarded, newspapers unduly influenced, and that the public service had been generally remiss in connection therewith. The dominant thought of it is severe criticism and condemnation of the action of the assessing body in lowering railroad assessments, and correspondingly and necessarily raising other assessments on the city's tax rolls.

The " people are watching with great care and are desirous of being informed concerning all questions of taxation and the acts of public officials in relation to the fiscal affairs of a city." (*Gardner* v. *Home Life Publications, Inc.*, 237 App. Div. 200.) Newspapers have the right to print both facts and comment in relation to the manner in which public officers perform their duties, and, in doing so, reasonable accuracy and fair comment is all that is required. There should be publicity commensurate with the interest of the public in public affairs. And the policy of the law is that the public should at all times be informed of the acts of its servants and the considerations to be applied in determining

whether or not the public welfare is being served, in order that it may be at all times aroused and alert to its just and essential part in the administration of government.

With these observations in view, it is difficult to conceive from a reading of the article that imputations or accusations of definite wrongful conduct against the plaintiff amounting to defamation or calumny was intended or can be derived from it.

The order should be reversed, with ten dollars costs and disbursements, and the complaint dismissed, with costs.

All concur.

Order reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.