ROSIKA SCHWIMMER, Plaintiff, *v.* WILLIAM FOX and Another, Defendants.

Supreme Court, New York County, February 16, 1934.

*Harry Weinberger*, for the plaintiff.

*Hirsh, Newman, Reass & Becker* [*Benjamin Reass, Irving Moldauer* and *Leonard G. Egert* of counsel], for the defendant William Fox.

*Ernst, Fox & Cane* [*Melville H. Cane* and *Pincus Berner* of counsel], for the defendant Upton Sinclair.

McCook, J. This is a motion to dismiss the complaint for failure to state a cause of action. Plaintiff, a publicist and lecturer, alleges that the defendants falsely and maliciously incorporated the following in a book published by them: " I asked W. F. what had been his previous experiences with Ford; for I had noted my subject's peculiar way of forgetting the enemies he has made, and how he has made them. I succeeded in dredging out of his memory three Henry Ford stories. Two of them have nothing to do with this book, but may serve some future historian with a taste for oddities. The third I think explains completely why W. F. didn't get the help he sought.

" The first story carries us back to the summer of 1916. ' A lady called on me and said she was Mrs. Rosika Schwimmer, and she asked me the following questions: " How would you like to have your name on the front page of every newspaper of the world? How would you like to have your name discussed at every dinner table? How would you like to be the most talked-of man in the history of the world? How would you like to sell twenty times more pictures than you do now? " I said there was only one of those things I was interested in, and that was how would I like to sell twenty times as many pictures as before. How could I do that? She said: " I have a plan. I have chartered a boat and I call it my peace ship. In reality it isn't any peace ship at all. I would like you to finance it. You must provide the food and the crew. From the time this ship starts it starts the four things I have just named."

" ' I asked if she hoped to bring peace. She said: " You know we can't do that. But the mere fact that the newspapers will be printing about it and people will be talking about it will get people to thinking about it, and that may result in peace." I asked her to leave the manuscript of her plan with me, that I would like to

think it over, and for how long would she give it to me with an option? She would give it ₊to me for a week. About three days later, she came back all excited — what could she do, all her plans were being upset. She said: " You know I have given you an option, and I didn't tell you that before I had a conference with you I went to Mr. Ford and asked him the same questions. And the strange thing about you two men is that he also said not to mind the rest, but tell him how he could sell twenty times as many cars as ever before. I got a telephone call this morning that he has accepted it, and wants to close the deal. What shall I do? " I told her I had given the matter consideration and didn't want to do it anyway. Eventually that was the Ford " Peace Ship."

" ' As you know, the ship did not succed in stopping the war, and America went in to make the world safe for democracy.' "

Plaintiff claims that the publication is libelous *per se* and, therefore, no allegation of special damage is necessary. (*Brodek* v. *Jones,* 212 App. Div. 247.)

We start with the rule recognized by the Court of Appeals in *Sydney* v. *Macfadden Publishing Corporation* (242 N. Y. 208, at p. 211): " Any written or printed article is libelous or actionable without alleging special damages, if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right thinking persons, and to deprive him of their friendly intercourse in society (*Bennet* v. *Commercial Advertiser Assn.,* 230 N. Y. 125; *Triggs* v. *Sun Printing & Pub. Assn.,* 179 N. Y. 144). A publication is libelous *per se* where its tendency is to disgrace the plaintiff, and bring him into ridicule and contempt (*Morey* v. *Morning Journal Assn.,* 123 N. Y. 207)."

The innuendoes cannot be considered. (See *Hays* v. *American Defense Society,* 252 N. Y. 266, at p. 269.) " The plaintiff cannot enlarge or change the language used in the pamphlet by innuendo. The purpose of the innuendo is to explain the application of the words used. Words which are not libelous in themselves cannot be made so by innuendo (*Fleischmann* v. *Bennett,* 87 N. Y. 231; *O'Connell* v. *Press Pub. Co.,* 214 N. Y. 352, at 360). * * * Still, if the pamphlet does not in fact charge the plaintiff with the things set forth in the innuendo, and when fairly read it appears that the plaintiff is not so charged, its meaning cannot be extended by innuendo to make it constitute a libel against him."

The question thus limits itself to the words actually used. The gravamen of the complaint is the falsity of " in reality it isn't any peace ship at all." This sentence does not stand alone. Almost immediately after it follows: " I asked if she hoped to bring peace.

She said, ' You know we cannot do that. But the mere fact that the newspapers will be printing about it and people will be talking about it will get people to thinking about it, and that may result in peace.' " Any one reading the first sentence quoted will almost certainly read the two following. Taken together, they do not furnish sufficient basis for action, even though the first sentence be assumed false. The article must be taken as a whole in order to determine whether it is defamatory. (*O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352, 358.) " It was not in and of itself libelous unless the language as a whole, considered in its ordinary meaning, naturally and proximately was so injurious to the plaintiff that the court will presume, without any proof, that his reputation or credit has been thereby impaired."

The Court of Appeals in its recent cases dealing with libel has shown a tendency towards limitation. (See the interesting analysis of alleged libelous matter in *Briarcliff L. Hotel* v. *C.-S. Publisher*, 260 N. Y. 106. See, also, *Kimmerle* v. *New York Evening Journal, Inc.*, 262 id. 99, 102.) " Considered and weighed ' in the minds of right-thinking persons ' (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, *supra*), or as elsewhere expressed, ' in the minds of ordinary, just and reasonable citizens ' (*Mycroft* v. *Sleight*, 1921, 90 L. J. K. B. 883, 37 Times Law Rep. 646, 648), do the words published by defendant tend to expose plaintiff to any of the evil results catalogued in the general statement above? " (See, also, *Brown* v. *New York Evening Journal, Inc.*, 143 Misc. 199.)

I hold that the alleged libelous matter does not " tend to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of her in the minds of right-thinking persons."

Motion is granted. Settle order.