## SWEENEY v. CAPITAL NEWS PUB. CO.
### No. 2113.

District Court, D. Idaho, S. D.
March 5, 1941.

Charles F. Reddoch, of Boise, Idaho, and John O'Connor, of Washington, D. C., for plaintiff.

Edward G. Rosenheim, of Boise, Idaho, for defendant.

CAVANAH, District Judge.

The plaintiff, a Congressman representing a district in the State of Ohio, brings

---

[1] No opinion for publication.

this action to recover damages against the defendant for an alleged libel in publishing a newspaper article which he claims to be libelous per se. No special damages are alleged, and the inquiry on the motion to dismiss is whether the words of the article, on their face, without explanation or extrinsic proof, would tend to impeach the honesty, integrity, virtue or reputation of the plaintiff and thereby expose him to public hatred, contempt and ridicule as defined by the statute of this State.

The newspaper article complained of, as alleged in the complaint, appears to be:

"A hot behind-the-scenes fight is raging in Democratic Congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge in Cleveland.

"The proposed appointee is Emerich Burt Freed, U. S. District Attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. District Court.

"This has aroused the violent opposition of Representative Martin L. Sweeney, Democrat of Cleveland, known as the Chief congressional spokesman of Father Coughlin.

"Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States. Born in Hungary in 1897, Freed was brought to the United States at the age of 13, and naturalized ten years later.

"Justice department officials say he has made an excellent record of U. S. Attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association. First on the list was Carl Friebolin, whom just department officials say they would have gladly appointed despite his age of 60, had he not eliminated himself voluntarily for physical reasons.

"Two others on the bar association's list, Walter Kinder and Harry Brainard, were eliminated because of big business or reactionary connections. Last on the list was Dan B. Cull, a former common pleas Court judge, and an excellent appointment except that he happened to be a Catholic and the last two judicial appointments in Ohio have been Catholics. So the justice department returned to the No. 2 man on the list, a Jew.

"Irate, Congressman Sweeney in endeavoring to call a caucus of Ohio Congressmen Dec. 28 to protest against Freed's appointment."

Libel is defined by the statute of the State to be: "A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt or ridicule." Section 17-1501, I.C.A.

 While there is no statute of Idaho defining civil libel and the statute referred to is a criminal definition of libel, yet, the Supreme Court of the State has applied it to civil actions for libel brought against newspapers and persons, and its decisions defining civil libel under the statute are controlling under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. They declare what must be the effect or tendency of publications to constitute them libelous per se, under different publications a particular state of facts which required, and does now require a consideration of the meaning of the words of the statute and the article as accepted in the use of the English language, and therefore a careful study and analysis of the words used becomes necessary, for they cannot be made libelous per se by innuendo or statements of conclusions. What, then, is the correct grammatical construction of the article when read as a whole? This seems necessary in order to ascertain if it comes within the meaning of the state statute. The article merely states that a hot fight is raging in democratic congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge who is Emerich Burt Freed, which has aroused the violent opposition of Martin L. Sweeney, Democrat of Cleveland, known as the chief congressional spokesman of Father Coughlin, and their opposition is that Freed is a Jew and one not born in the United States, and that the justice department officials say that he has made an excellent record as a United States Attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association, the first on the list being one of the age of sixty who voluntarily eliminated himself, and that the justice department returned to Freed, a Jew which irate Congressman Sweeney is endeavoring to call a caucus of Ohio Congressmen to protest Freed's appointment.

■■ We fail to find any words thus expressed tending to impeach the honesty, integrity, virtue or reputation of the plaintiff, or that they expose him to public hatred, contempt or ridicule, for to only say that the plaintiff, a congressional spokesman of Father Coughlin, opposes the appointment of Freed, a foreign-born Jew, includes all Jews as a race regardless of their place of birth, would require the insertion of the words—all Jews. Nor does the reference that the plaintiff and Father Coughlin are together in opposing the appointment to the judiciary of a Jew of foreign birth in absence of any reference in the article by words as to what Father Coughlin has and is doing against the Jewish race other than the reference that the basis of the plaintiff's and Father Coughlin's opposition is that Freed is a Jew of foreign birth. We cannot, under the law of libel, insert into the article words or innuendoes as to who Father Coughlin is and his animus, if any he has, against a Jew, because it is too well settled that when one rests his case, as here, solely upon the contention that a recovery is to be had because the article is libelous per se, the court must look to the words in the article, and their tendency, and cannot go beyond that and apply other words by innuendo to support the conclusion that the article is libelous per se. The literal meaning of the term "per se" is: "by itself" or "in itself". The opposing of a foreign-born Jew or a foreign-born person of any nationality, which a Congressman, or any other person has the right to do, does not have a tendency, or impair plaintiff's reputation. We are too prone these days in imagining that the use of certain words in expressing a privilege one has will have a tendency of producing a certain result. So the simple meaning of the term "per se" includes the idea of words being actually per se in themselves.

Under our fundamental principle of government of the right of free speech there exists a keen diversity of opinion, often expressed, of belief of religious faiths and nationalities in the holding of public office which would not warrant the holding up of a person who has such belief to scorn or contempt among right-thinking people to make a publication expressing such belief libelous per se, and such publication could not fairly be said to have such tendency if we adhere to the belief of fair expression of thought.

The expression in the article of "irate Congressman" in calling a caucus to oppose the appointment, which means, moved by anger, does not, when used and accepted by the public during these irritating times, tend to be injurious to the one so acting, whether applied to one acting in public or private life, and especially so when one in public life has to be constantly dealing with unusual irritating problems which would strain the patience of Job, and because one in public life may become provoked over the application for appointment of another to a public position does not expose him to public disgrace or induce an evil opinion of him in the minds of right-thinking people, so the word "irate" when used in the article merely means that the Congressman was moved by anger; that he was provoked, irritated and having a sudden and strong displeasure. It does not appear in the article that the plaintiff was charged with any crime, corruption, fraud, dishonesty or any immoral or vicious practice or unworthy in office, or relate to him in his profession as a lawyer.

The contention that a Congressman who opposes the appointment of a foreign-born person to the federal judiciary is violative of his oath of office and would have a tendency to expose him to ridicule and public contempt, and injury to him does not follow from the words used in the article.

The Supreme Court of the State on several occasions was called upon to interpret the meaning and effect of certain published articles in determining whether they were libelous per se, where no claim for special damages was made, by reason of the wording of the article and the court was confronted with the wording of certain articles where they showed malice or pecuniary loss, or a crime charged, or vicious practice or referring to one's honesty and reputation, which all appeared to be different than the wording of the present article, and therefore they do not throw any light upon whether the present article is or tends to bring it under the state statute to make it libelous per se.

The further thought urged by the defendant that the article is privileged and no right of action exists presents a doubtful question, and as the conclusions thus reached require the sustaining of the motion to dismiss, it becomes unnecessary to dispose of the same.

The views thus expressed require that the motion to dismiss be granted.