**SWEENEY v. SCHENECTADY UNION PUB. CO.**

**No. 350.**

Circuit Court of Appeals, Second Circuit.

July 18, 1941.

Rehearing Denied Aug. 15, 1941.

CLARK, Circuit Judge, dissenting.

———◆———

DeGraff & Foy, of Albany, N. Y., (John O'Connor and William F. Conway, both of Albany, N. Y., of counsel), for plaintiff-appellant.

Charles G. Fryer, of Schenectady, N. Y., for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

Jurisdiction in this suit for the libelous publication by the defendant of the statements concerning the plaintiff which will presently be set forth rests upon diversity; the plaintiff being a resident of Ohio and the defendant a New York corporation. The appeal is from an order dismissing the complaint on motion after the filing of an answer consisting of a general denial; special matter in mitigation of damages; and the truth of the matter printed coupled with the right to comment fairly thereon. No special damages were alleged and the question before us is whether the publication, which on this appeal must be taken for granted as having actually been made and having been false, was libelous per se. O'Connell v. Press Publishing Co., 214 N.Y. 352, 108 N.E. 556.

The complaint alleged that the plaintiff, a representative in Congress from Ohio and a lawyer by profession, who was a member of the bar in good standing in the State of Ohio, had been "injured in his good name, fame and reputation, in the conduct and execution of his official duties as a duly elected and chosen representative of the people of the State of Ohio in the Congress of the United States, in pursuance of his profession as a practicing attorney in good standing before the Bar in the State of Ohio, in his standing in the community wherein he resides, and in the high regard, respect, confidence and esteem he has hitherto enjoyed among his associates both in the Congress of the United States and in the legal fraternity and elsewhere" by the publication by the defendant in a newspaper called the "Schenectady Union Star" which is widely circulated and read "in the State of New York and the states of the United States and among the people thereof" of the following:

"A hot behind-the-scenes fight is raging in Democratic congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge in Cleveland.

"The proposed appointee is Emerich Burt Freed, U. S. District Attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. District Court.

"This has aroused the violent opposition of Representative Martin L. Sweeney, Democrat of Cleveland, known as the chief congressional spokesman of Father Coughlin.

"Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States. Born in Hungary in 1897, Freed was brought to the United States at the age of 13, was naturalized 10 years later.

"Irate, Representative Sweeney is endeavoring to call a caucus of Ohio Representatives December 28 to protest against his appointment."

The matter so published was received by the defendant for publication from an organization known as United Feature Syndicate, Inc. It was published in much the same form in many other newspapers in this country and the resulting libel suits brought in various courts by this plaintiff have been numerous. In some instances motions to dismiss the complaint on the ground that the publication was not libelous per se have been granted; in some such motions have been denied. Decisions in other jurisdictions, however, are not only conflicting but are for us inconclusive since they have turned on the application of the libel law of states other than New York while here we must be governed by the law of the State of New York. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We are not concerned, how-

ever, with any libel upon the plaintiff as a lawyer since no reference was made in the publication to that profession of his. Keene v. Tribune Association, 76 Hun 488, 27 N.Y.S. 1045.

The false statements published concerning him neither separately nor together make him out to be a character more offensive to right-thinking people than he would be as the spokesman in Congress of Father Coughlin; who opposed the appointment of a man named Freed to the office of United States District Judge because Freed was a Jew and one not born in the United States; and who was angry about the matter to the point of attempting to have Ohio congressmen protest in caucus against Freed's appointment.

But, all else aside, they do clearly attribute to him the desire and purpose to try to prevent the appointment of Freed to the office mentioned for the reason that Freed is a Jew who was foreign born. The context does not fairly permit reading the language as making the foreign birth of Freed the all sufficient cause of the plaintiff's opposition to his appointment but rather the contrary by stressing the fact that he was a Jew whose foreign birth apparently but gave an additional basis for plaintiff's opposition. And so the decisive question to be determined on this appeal is whether or not the publication of such false and unprivileged statements concerning the plaintiff within the last few years in the places as alleged in the complaint may be said as a matter of law not to have created any liability in the absence of special damages.

■ The New York law, as stated in Kimmerle v. New York Evening Journal, Inc., 262 N.Y. 99, 186 N.E. 217, 218, makes libelous per se the publication of "words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." To the same effect is Sydney v. MacFadden Newspaper Pub. Corp., 242 N.Y. 208, 151 N.E. 209, 44 A.L.R. 1419. This is in general accord with the definition found in the Restatement of the Law of Torts. See § 559. The test is whether right-thinking persons would be reasonably expected to be induced by the publication to believe that it truthfully represented the plaintiff's attitude on the subject of Freed's appointment and would be likely to regard him as a consequence in such a way that his reputation was injured in one or more of the respects above noted. It is, of course, not easy to apply this general test to a case of this nature. Opinions or prejudices concerning the matter in hand might well lead to different conclusions.

■ Some principles established in New York libel law are especially helpful in arriving at a just decision. One of them is that a false statement need not necessarily charge the violation of any law to be libelous per se; and another is that, when made of a public official, false accusations which may well lead right-thinking people to believe him unworthy of public trust and confidence are libelous per se. Bennet v. Commercial Advertiser Ass'n, 230 N.Y. 125, 129 N.E. 343. And still another is that an unprivileged, published falsehood need not make all, or even a majority of those who read it think the less of the person defamed. It is enough if a noticeable part of many who read it are made to hate, despise, scorn or be contemptuous of the person concerning whom the false statements have been published. Peck v. Tribune Company, 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann.Cas. 1075; Restatement, Torts, § 559(e).

■ And certainly the time and place of publication must be given due weight and effect. This plaintiff by being accused of trying to deprive a man of an appointment to public office because, presumably both in race and religion, he was Jewish would, intolerance being what it is, no doubt gain approval and increased respect in some quarters; and in others, where only the hit bird flutters, there would be indifference; but in a country still dedicated to religious and racial freedom decent, liberty-loving people still are present in great numbers and still are greatly offended by the narrow-minded injustice of the bigots who see individuals only en masse and condemn them merely because their ancestors were of a certain race or they themselves are of a certain religion. Those who hate intolerance are prone to regard the person who believes in and practices acts of intolerance with aversion and contempt. And in these times when it is universal knowledge that one foreign dictator gained his power by practices which included large-scale, unreasonable Jewish persecutions which have played an important part in

making his name an anathema in many parts of this country the publication of statements such as those alleged may well gain for the person falsely accused the scorn and contempt of the right-thinking in appreciable numbers. Freedom of speech is, as it always has been, freedom to tell the truth and comment fairly upon facts and not a license to spread damaging falsehoods in the guise of news gathering and its dissemination.

■ Moreover, in places where Jews make up a sizeable portion of the population, as they are known to do in part of the territory in which it is alleged that the defendant's newspaper circulated when the publication was made, it may be taken for granted that there will be an appreciable number who will hate or hold in contempt one who discriminates against a Jew merely because he is a Jew whether born in this country or not. A majority of the court is of the opinion that the complaint is sufficient under the principles above stated and that the defendant should be required to meet it on the merits.

Order reversed and cause remanded for trial.

CLARK, Circuit Judge (dissenting).

The decision herein seems to me not in accordance with New York law, where the right of comment on a public official has been safeguarded in a practical way by "a somewhat different rule" than in ordinary cases and "a clear charge of corruption or gross incompetence holding one up to disgrace and contumely" is required; even an imputation of corrupt or dishonorable motives will be justified as fair comment if it is a reasonable inference from the facts. Tanzer v. Crowley Pub. Corp., 240 App. Div. 203, 268 N.Y.S. 620, 622; Gardner. v. Home Life Publications, Inc., 237 App. Div. 200, 260 N.Y.S. 872, 874; Hills v. Press Co., 122 Misc. 212, 202 N.Y.S. 678, 681, affirmed 214 App.Div. 752, 209 N.Y.S. 848. And so the cited cases hold not libelous per se comments on public officers more directly suggesting corrupt motives than does the one here—which charges rather bigotry and prejudice than corruption or impropriety in office. In the Tanzer case the comment attributed dishonorable motives to a mayor in his appointment of a city attorney; in the Hills case the comment charged special favoritism by a city fuel administrator to particular coal dealers and in the prosecution of cases. I think it clear that the charge must go to the extent of definite impropriety in office, as in Bennet v. Commercial Advertiser Ass'n, 230 N.Y. 125, 129 N.E. 343, but clearly not in the present case, before recovery can be had without proof of special damages.

Moreover, this view seems to be general, as shown by the fact that the majority of the many actions brought by this plaintiff against various newspapers based on this same article have been dismissed. Many cases were disposed of without reasoned opinions; of those where the matter is discussed, reference may be made to the persuasive reasoning of the Tennessee Supreme Court speaking through Chief Justice Green in Sweeney v. Newspaper Printing Corp., 147 S.W.2d 406, of Cavanah, D.J., in Sweeney v. Capital News Pub. Co., D.C. Idaho, 37 F.Supp. 355, of the Ohio Court of Appeals, affirming the dismissal below, in Sweeney v. The Beacon Journal Publishing Co., 66 Ohio App. 475, 35 N.E.2d 471, appeal dismissed 138 Ohio St. 330, 34 N.E.2d 764, May 7, 1941, and of the district court in this case. Of such opinions to the contrary we find only two, both by the same district judge in the Northern District of Illinois, apparently unreported, and based upon an interpretation of Illinois law as limiting comment on public officers.

Not only does this seem to me, therefore, new law at least for New York State, but also definitely disturbing law. It would be a fine world to live in if only tolerance were so usual that a charge of the lack thereof against a public official could be so presumptively untrue that it would seem on its face unfair and libelous. But in our present world we must not take the naive view that what ought to be is, and that whoever suggests the contrary is a slanderer; for if we do so, we shut off all healthy criticism of prejudice, and allow bigotry full scope to act with impunity. Even more dangerous is the rationale of the decision that a comment leading an appreciable number of readers to hate or hold in contempt the public official commented on is libelous per se. Its broad sweep would take in comments found day after day in the most conservative newspapers, either in direct statement or as quotations of responsible critics, that a public official, particularly a legislator, is pro- or anti-labor, or pro- or anti-Nazi, or pro or anti this or that race, color, or creed. Minority comment on labor, religious and political views

and activities of politicians becomes therefore hazardous. And the making of fine distinctions in rationale is indicated by the implication that a comment suggesting plaintiff's objection to the judicial candidate for his foreign birth alone would have been proper. Of course, the uncertain threat of suit, invited by a rule at once so vague and so extensive, is a restriction on freedom of the press almost as direct as a rule of clear liability.

I do not think it an adequate answer to such a threat against public comment, which seems to me necessary if democratic processes are to function, to say that it applies only to false statements. For this is comment and inference, as the Tanzer case suggests, and hence not a matter of explicit proof or disproof. The public official will always regard himself as not bigoted, and will so testify, sincerely enough. And then the burden of proving the truth of the defense will rest upon the commentator, who must sustain the burden of showing his inference true. If he fails in even a minority of the suits against him—as the sporting element in trials to juries susceptible to varying shades of local opinion would make probable—he is taught his lesson, and a serious brake upon free discussion established. But the common-law requirement of proof of special damages gives him the protection he needs, while at the same time it does prevent him from causing really serious injury and loss by false and unfair statements. That should be the rule applied here, as the district court held.