**DYER v. MacDOUGALL et ux.**

**Civ. A. No. 11011.**

United States District Court
E. D. New York.

Oct. 30, 1950.

Moss & Wels, New York City, for plaintiff.

Breed, Abbott & Morgan, New York City, for defendant Albert Edward Mac-Dougall. Charles H. Tuttle, Lloyd V. Almirall, John S. Brittain, III, New York City, of counsel.

**486**

GALSTON, District Judge.

The defendant, Albert Edward Mac-Dougall, moves to dismiss the first, second, third, fourth and seventh causes of action on the grounds that they fail to state claims upon which relief can be granted against this defendant.

■ The defendants are husband and wife, and reside in the Eastern District of New York. The plaintiff is a citizen of Missouri. Jurisdiction is, therefore, based upon diversity of citizenship. The sufficiency of each of the alleged causes of action is thus governed by the law of the State of New York, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The plaintiff is an attorney and admitted to practice in the States of Illinois, Missouri and New York, and in the Supreme Court of the United States. Each of the eight causes of action is for slander, alleged to have been spoken in the City of New York.

Though it will be necessary to take up separately each of the actions challenged by the defendant, it may be observed generally that the plaintiff had been an assistant secretary and director of the Queensboro Corporation and other real estate corporations of which MacDougall was president. These corporations constituted an integrated enterprise for the ownership of real estate, and for the construction, management and servicing of apartment houses and business and educational properties located in Jackson Heights, New York.

In the first cause of action he alleges that some time between July 25, 1949 and October 27, 1949, MacDougall said of the plaintiff, in talking to his wife, Inez Brown Mac-Dougall, "Dyer has showed a lack of cooperation on Greenbrier, which the company must succeed with to make up losses". The complaint says that the word "company" refers to the Queensboro Corporation, of which Dyer was then a director and assistant secretary, and that "Greenbrier" referred to an apartment building project devised by MacDougall. Dyer says these words were wholly false, and were known

to MacDougall to have been false, and were uttered for the purpose of imputing that Dyer was not a loyal officer and director of the Queensboro Corporation; that he was insubordinate and contumacious. Dyer concludes that he was injured in his good name as an attorney and counsellor at law, and was thus held up to ridicule and contempt of his relatives, friends and the public, and to his damage in the sum of $10,000.

■ There are various grounds on which this cause of action fails to state a claim on which the plaintiff is entitled to relief. In the first place, lack of publication is a ground for dismissal. A communication from husband to wife in the absence of a third person is not publication, and is not actionable as slander, whatever the motive may be, and though the statement may be false; Lawler v. Merritt, 182 Misc. 648, 48 N.Y.S.2d 843; affirmed without opinion, First Dept., 269 App.Div. 662, 53 N.Y.S.2d 465. Plaintiff's reference to the 1937 amendment of Sec. 57 of the Domestic Relations Law of New York, McK.Consol. Laws, c. 14, which gives a right of action by or against a married woman, and by husband or wife against the other for torts, does not wholly abrogate the fiction of the unity of husband and wife. This is specifically recognized in Lawler v. Merritt, supra.

■ Another ground properly urged in support of the proposition that there is no cause of action stated is that no case of slander is made out. To say that the plaintiff "showed lack of cooperation" is certainly not slanderous per se. The words do not impute crime; nor can it be inferred that the words disclose anything dishonorable or improper in the conduct of the plaintiff's vocation. The temptation in these slander and libel cases to review the authorities in respect to the general law on slander and libel is always more or less great. Perhaps, however, it will be sufficient to quote from the opinion of Judge Cardozo, in Ostrowe v. Lee, 256 N.Y. 36, at page 39, 175 N.E. 505 at page 506: "The schism in the law of defamation between the older wrong of slander and the newer one of libel is not the product of mere accident. Veeder, The History of

the Law of Defamation, vol. 3, Essays in Anglo-American Legal History, 459, 461, 467, 468, 471; Fisher, The History of the Law of Libel, 10 L.Q.R. 158; 1 Street, Foundations of Legal Liability, pp. 291, 292; 8 Holdsworth, History of English Law, p. 365. It has its genesis in evils which the years have not erased. Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. What gives the sting to the writing is its permanence of form. The spoken word dissolves, but the written one abides and 'perpetuates the scandal.' Harman v. Delany, Fitzgibbon, 253, 254; Veeder, supra, p. 472; Street, supra p. 294."

■ For this reason, because of the difference as thus indicated between slander and libel, many of the cases cited by the plaintiff are not in point. What may be libelous per se is not always slanderous per se, Hartmann v. Winchell, 296 N.Y. 296, 73 N.E.2d 30. Kober v. Lyle, 173 App. Div. 655, 160 N.Y.S. 99 is particularly pertinent, where it was held that the spoken words had no bearing upon the character of the plaintiff in his vocation. Other cases in point are Weidberg v. La Guardia, 170 Misc. 374, 10 N.Y.S.2d 445; Thorner v. Samuels, 122 Misc. 139, 203 N.Y.S. 316, affirmed 209 App.Div. 863, 205 N.Y.S. 955.

■ Nor does the first cause of action allege any special damage. Under the authorities, to be sustainable it should, O'Connell v. Press Publishing Co., 214 N.Y. 352, 108 N.E. 1102. Shakun v. Sadinoff, 272 App.Div. 721, 74 N.Y.S.2d 556, 557, sets forth the correct rule: "Words which directly tend to injure or prejudice the reputation of the plaintiff in the way of any office held by him, or in the way of any lawful profession or trade carried on by him, are actionable without proof of special damage. In such cases, the plaintiff must allege in his statement of claim, and prove at the trial, that he held the office, or carried on the profession or trade, at the time when the words complained of were published. He must also allege and prove that the words were spoken in reference to his character or conduct in such office, profession or trade. There must be some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the slander with such office or profession or trade. If the words merely impute to the plaintiff some misconduct unconnected with his office, profession, or trade, they are not actionable without proof of special damage: it is not sufficient that they are calculated to injure him therein."

■ Applying the law of that case to the first cause of action, the statement made by MacDougall to his wife, per se or by reasonable innuendo, fails to show injury to the plaintiff as an attorney and counsellor at law. Since the words are not defamatory per se, the statement cannot be enlarged by innuendo to explain the application of the words as alleged in the complaint. Thus in Hays v. American Defense Society, 252 N.Y. 266, 169 N.E. 380, it is said flatly that "Words which are not libelous in themselves cannot be made so by innuendo."

Proceeding then to a consideration of the second, third, fourth and seventh causes of action, we find that the frailties of the first cause of action are no less apparent in the other causes challenged. In the second cause of action it is alleged that Mrs. MacDougall, acting in behalf of her husband as agent, said to one Dorothy Russell Hope, a sister of plaintiff's wife, concerning the plaintiff: "He is uncooperative about it and very didactic."

In the third cause of action it is alleged that MacDougall, in the presence and hearing of three other persons, Dahl, Lassiter and Siemon, said to the plaintiff: "You are stabbing me in the back." Dahl at that time was and now is the treasurer of the Queensboro Corporation, and affiliated corporations; Lassiter is a vice-president of these corporations, and Siemon was an attorney for each of them.

In the fourth cause of action MacDougall said to one Rogers, concerning the plaintiff: "I had to let him go." Rogers, a lawyer, was at that time a director of the Queensboro Corporation.

In the seventh cause of action it is alleged that MacDougall said to Mrs. MacDougall: "Dyer has written and mailed a blackmailing letter."

As was said concerning failure of publication in respect to the first cause of action, the same may be said about the seventh cause of action.

It must be observed that in none of the foregoing causes of action are circumstances set forth which would relate the alleged slanderous words to the plaintiff in his professional character. Certainly differences of opinion, as would be suggested by the language set forth in the second cause of action, would not even indicate bad faith. Without enlarging the plain meaning of the words spoken, that a person is "uncooperative", "didactic", or that he had to be "let go" cannot be construed to mean that he is "disloyal", "contumacious" or "insubordinate". A fortiori, they cannot be construed as charging the plaintiff with unprofessional conduct, or as injuring him in his professional character.

The language, "You are stabbing me in the back", complained of in the third cause of action, is on its face stronger than the language charged in the first, second or fourth causes of action, and can be construed without the need of resorting to innuendo as charging the plaintiff with reprehensible conduct. It is alleged that the accusation was false, and was made with the intent to injure the plaintiff in his character as an attorney. The difficulty is that the reference is to some possible consequences to the individual defendant, not to the corporate employers of the defendant and the plaintiff. It cannot be concluded, therefore, that the words refer to plaintiff's duty as an officer or director of the corporation, or indeed to disloyalty to the corporation. It may indeed be serious, depending upon the circumstances in which the words were uttered. However, there is nothing in the allegations themselves to indicate what the circumstances were which preceded the utterance of the words. Consequently it cannot be said that there is any reference which connects the allegedly slanderous words with plaintiff's professional character. Under the conditions set forth it would be a forced construction to hold that the words were of such a nature as directly to injure or even tend to injure or prejudice the plaintiff's reputation as an attorney and counsellor at law.

As I have said, the plaintiff cited and discussed in his brief a number of New York State court decisions, most of which cases deal not with slander but with libel. The written as opposed to the spoken words may be libelous per se when they hold the plaintiff up to ridicule and contempt, Triggs v. Sun Printing & Publishing Association, 179 N.Y. 144, 71 N.E. 739. Recovery thus could be had in the absence of any allegation of special damage. However, as has been indicated, the rule of slander has not been so extended. And indeed the statements held to be libelous per se were of a far more serious nature than anything suggested in the pending action. For example, see Bennet v. Commercial Advertisers Association, 230 N.Y. 125, 129 N.E. 343, 345. In that case the following statements, among others, were regarded as libelous:

" 'It (this column) calls attention to the fact that Mr. Bennet, while paid to represent his constituents in Congress and to attend to the business of the nation, was really devoting much of his time to the interest of Hudgins & Dumas, food contractors at Ellis Island.'

\*     \*     \*     \*     \*     \*

" 'Mr. Bennet is a disgrace to his constituency and to New York. \* \* \* To be the attorney for the food contractor and then as Congressman to serve that contractor—nothing more need be said.' "

Sydney v. MacFadden Newspaper Corporation, 242 N.Y. 208, 151 N.E. 209, involved a photograph of a married woman and the statement that she had become the "lady love" of a man other than her husband. The article was deemed to be libelous per se. So too, to say that a corporation counsel is working against the municipality that employs him, as in Corwin v. Berkwitz, 190 App.Div. 952, 179 N.Y.S. 915, is certainly libelous per se, as is also the statement that a Village Attorney had "sold out" the taxpayers in favor of a rail-

road company in a controversy between the village and the railroad company, as in Rathkopf v. Walker, 190 Misc. 168, 73 N.Y.S.2d 111.

■ A motion to dismiss, however, for failure to state a claim for relief should not be granted unless it appears certain that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim, though it must be emphasized, as Professor Moore states it in his Federal Practice (2nd Ed. 1948, V. 2), page 1653: "The pleading still must state a 'cause of action' in the sense that it must show 'that the pleader is entitled to relief'."

The motion will be granted, but with leave to the plaintiff to amend the stricken causes of action within twenty days of the receipt of notice of the entry of the order.

Settle order.