**Gary WEBSTER, Plaintiff,**

v.

**The TOWN OF TORRINGTON and Billy Janes, individually and in his capacity of Chief of Police for the Town of Torrington, Defendants.**

**No. C89–0006J.**

United States District Court,
D. Wyoming.

July 7, 1989.

Harold F. Buck, Cheyenne, Wyo., for plaintiff.

Mark Carman, Casper, Wyo., Bruce Salzburg, Cheyenne, Wyo., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

JOHNSON, District Judge.

### Standard on Summary Judgment

A party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate when a moving party points to an absence of evidence to support the nonmoving party's case; a moving party is not required to support its motion with affidavits or other similar materials *negating* the nonmovant's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A material fact is one that might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue as to a material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A moving party

is entitled to judgment as a matter of law where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 106 S.Ct. at 2553. The evidence of the nonmoving party is deemed true and all reasonable inferences are decided in his favor. *Anderson,* 106 S.Ct. at 2514. *See also Manders v. The State of Oklahoma,* 875 F.2d 263, 264–65 (10th Cir.1989).

### Background

On 16 September 1980 Gary Webster was hired as a patrolman by the Town of Torrington. In accordance with written regulation, Mr. Webster became a permanent employee one year later. In 1982 or 1983 he was promoted to the rank of sergeant. Webster Deposition at 8. On 14 September 1988 Mr. Webster was terminated from employment. By an Amended Complaint of 12 May 1989, Mr. Webster asserted claims against all defendants pursuant to 42 U.S.C. § 1983, alleging deprivations of property and liberty interests without due process of law. In addition, he asserted a breach of contract claim under state law against the Town of Torrington. On 1 June 1989 this court held a hearing on dispositive motions filed by each party.

### Property Interest

#### A. Procedural Requirements

■ All agree that Mr. Webster had a constitutionally protected property interest in his employment. By virtue of this status, Mr. Webster was guaranteed due process before being deprived of his employment. The guaranteed procedures are defined by federal, not state, law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). The parties disagree as to whether the process given met with the requirements of the fourteenth amendment.

In *Loudermill,* 470 U.S. at 535, 105 S.Ct. at 1489, the Supreme Court announced "what pretermination process must be accorded a public employee who can be discharged only for cause." The Court began by restating an essential principle of due process, namely, that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). The Court then stressed the importance of "some kind of a hearing" *before* the deprivation. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493.

■ The required pretermination hearing is generally something less than a full evidentiary hearing. It "need not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. The timing and extent of the required hearing depends on the balancing of the competing interests at stake. *Id.* at 542, 105 S.Ct. at 1493. Fundamental due process requirements include notice and an opportunity to respond, which includes an opportunity to present reasons against proposed action.

After weighing the competing interests in the tenured public employment situation, the Court stated that such an employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495 (citing *Arnett v. Kennedy,* 416 U.S. 134, 170–71, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974) (opinion of Powell, J.); *id.* at 195–96, 94 S.Ct. at 1664–65 (opinion of White, J.); *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975)). These protections allow an inquiry into whether the charges may reasonably be made against the employee, and whether they are true and support the proposed action. *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. A hearing conducted with these procedural protections is "an initial check against mistaken decisions." *Id.* at 545, 105 S.Ct. at 1495.

#### 1. Pay Reduction

On the night of 21 August 1987, Sgt. Webster arrested an eighteen year old minor, Paul Servantez, for being a minor having consumed and for using a fake I.D. to obtain liquor. Webster Deposition at 19–20; Webster Deposition Exhibit E (Appeal

to Town Council). At the police department, alleged verbal abuse and general bad behavior by Servantez led to the following action by Sgt. Webster: "I jerked him out of the chair to throw him up against the wall, and I threw him and he hit a hollow core door head first. And after that there was a wrestling match in which I got him handcuffed." Webster Deposition at 22. Sgt. Webster left this incident out of his report. *Id.* at 23. A videotape recorded the Servantez incident. According to Sgt. Webster's understanding, Sgt. Fisher showed the video to Harley Mark at a later time. This incident came to the attention of Police Chief Reeves.

On 9 September 1987 Police Chief Reeves informed Sgt. Webster in writing of a suspension with pay. Chief Reeves informed Sgt. Webster that an internal affairs investigation was being conducted on the 21 August 1987 incident. On 10 September 1987 a taped interview was conducted between Lt. Billy Janes and Sgt. Webster. In this interview, Sgt. Webster explained his version of the Servantez incident. Defendant Janes' Response to Plaintiff's Motion for Partial Summary Judgment (19 May 1989), Exhibit A. On 11 September 1987 Sgt. Webster supplemented this interview with a report more fully describing the incident. On 14 September 1987, Chief Reeves issued results and findings of the internal affairs investigation. Based on the VCR tape and the interviews conducted, Chief Reeves found several violations of the Rules and Regulations of the Torrington Police Department and the Town of Torrington, Wyoming. As discipline for this misconduct, Chief Reeves imposed a two-week suspension without pay and a reduction of pay by one pay grade. Webster Deposition, Exhibit C. At the end of the findings, Chief Reeves advised Sgt. Webster of his right to appeal to the town council.

On 23 September 1987 Sgt. Webster submitted a written appeal to the town council. Sgt. Webster acknowledged that his appeal was untimely, but requested the mayor and town council to consider it anyway. The nature of the appeal was described in the following language:

I would like to appeal just the reduction in pay grade,[1] because it is a punishment that will stay with me throughout my career. It is a first offense and the subject has never even made a complaint. There was no physical injury or monetary loss, and I feel that the monetary loss that is being inflicted on me is excessive and cruel.

Sgt. Webster described his feelings of unfair treatment in the following language:

The issue at hand is what happened, and not what might have happened. Please consider that the punishment is excessive for what actually happened. The Town was not put in a Civil Rights Violation. I feel that I have been punished for something that might have happened, and not for what did actually happen. There was no injury, no money loss, and I question that the incident was gross misconduct when only my superior complained.

Webster Deposition, Exhibit E.

In accordance with Sgt. Webster's right of appeal, a hearing was held before the mayor and town council. Sgt. Webster alleges that this hearing was deficient for the following reasons:

Plaintiff was prohibited from attending the hearing, except to present his own evidence. He was not permitted to hear or see the evidence against him and was not offered a meaningful hearing.

Amended Complaint, ¶ 10. This allegation is contradicted by sworn testimony. Lt. Janes testified that prior to the hearing, Sgt. Webster had advised that he did not wish to be present during the testimony of the other witnesses. Janes Deposition, pp. 118–19. Neither the mayor nor any council member prohibited Sgt. Webster's attendance. Mitchell Deposition at 23–24; Vonburg Deposition at 5–6; Ringle Deposition at 5; Haught Deposition at 9–10; Varney Deposition at 7. The town attorney, Steve Graham, testified to an understanding "that Gary did not want the chief in there

1. Although the complaint is contradictory on the question, the court will treat it as alleging a claim under procedural due process for the two-week suspension without pay.

because of the fact that he had to work with the chief and wanted to speak freely and not be hindered by the chief being there or worry about maybe retribution or something for what he said in there." After hearing and reviewing the evidence, the town council upheld Chief Reeves's choice of discipline.

In *Meder v. City of Oklahoma City*, 869 F.2d 553 (10th Cir.1989), a dismissed police officer asserted that his hearing lacked due process. The Tenth Circuit rejected the claim, relying in part on the following language:

> Meder does not explain, however, how confrontation and cross-examination would have changed the board's inference that these two admitted facts [Meder, a police officer, tried to "fix" Jantz's Highway Patrol tickets, and subsequently accepted four free tires from Jantz] were reasonably related.

*Id.* at 555. The same considerations apply in this case. The board had before it the videotape of the Servantez incident. Sgt. Webster did not deny the underlying facts, but simply contested the appropriateness of the discipline imposed. This court finds that the hearing before the town council complied with due process.

Sgt. Webster also contends that Chief Reeves's decision violated *Loudermill* since no meaningful opportunity to be heard was afforded prior to the decision. In view of Sgt. Webster's own statements and matters contained in the record, the court finds this allegation meritless. Sgt. Webster testified that he was advised of the charges against him and had a chance to respond to them. Webster Deposition at 24. He further testified that he gave Lt. Janes his side of the story. *Id.* at 25. This testimony is well borne out by the printed transcript of the interview between Lt. Janes and Sgt. Webster. It is further borne out by Sgt. Webster's supplement of 11 September 1989. The court finds that all defendants fully complied with all requirements imposed by *Loudermill.*

## Discharge

On 10 September 1988 Sgt. Webster and Larry Curtis received a call from a woman reporting that subjects leaving a truck in front of 1709 East had urinated on her front yard. She pointed to a house on the southwest corner and said that they had gone over there. Upon arriving at the house allegedly containing the suspects, Sgt. Webster inquired as to who owned the red and white Ford truck across the street. He was told that Corey Childs did. Pursuant to Sgt. Webster's request, Corey Childs came outside the residence. Believing that Corey Childs was heavily intoxicated, Sgt. Webster decided to take him to the police station. The arrest was for two misdemeanors, disorderly conduct (urinating on the complainant's lawn) and minor having consumed alcohol. beverage. Corey Childs attempted to get back in the house and Sgt. Webster held him by his arm. As the two officers made their way to the police car, Corey Childs violently resisted. At this point someone jumped on Sgt. Webster's back. Sgt. Webster swung his flashlight back across his chest in an effort to remove that person, but struck his fellow officer, causing a wound that later required stitches. Sgt. Webster was soon fighting four or five people at one time. Webster Deposition at 54–64.

Before the internal affairs investigation began, Police Chief Janes spoke with Sgt. Webster. Janes Deposition at 30. Responding to complaints concerning the arrest, Chief Janes ordered an internal affairs investigation of the incident. Janes Affidavit, ¶ 3. On 10 September 1988 Sgt. Webster submitted a six-page written report concerning the incident. Chief Janes directed Lt. Mark to conduct the internal affairs investigation. Janes Deposition at 40.

After the internal affairs investigation was completed, Chief Janes found several improprieties committed by Sgt. Webster and his companion officer, Larry Curtis. As he deliberated over appropriate discipline, he learned from members of the town council that Sgt. Webster was on "probation" from the August 1987 incident involving Paul Servantes. To determine whether this information was true, Chief Janes contacted former Chief Reeves in

Iowa by telephone. Chief Reeves explained the September 1987 discipline over the telephone and confirmed it by letter. Janes Affidavit ¶¶ 3–5; Defendant Janes' Response to Plaintiff's Motion for Partial Summary Judgment, Exhibit 1 (Reeves Letter). Chief Reeves advised Chief Janes that the 1987 disciplinary action was to remain in Sgt. Webster's personnel file for a period of two years according to the departmental SOP.

On 13 September 1988 Chief Janes issued findings of the internal affairs investigation. He found the initial arrest unlawful. In summary, he stated as follows:

> [On] reviewing the investigation I have determained [sic] that you have acted in a manner unbecoming of a [sic] officer with the Torrington Police Department. This misconduct in conjunction with the previous action of September 14, 1987, together [with] prior incidents[2] gives cause for dismissal.

He then advised Sgt. Webster of his right to appeal.

All agree that Sgt. Webster was not a probationary employee. Sgt. Webster's attempt to persuade the court that Chief Janes operated under a misconception as to this fact is entirely unconvincing. The "probation" occupying Chief Janes's attention concerns Sgt. Webster's status in progressive discipline. In Chief Reeves's 14 September 1987 findings of internal affairs investigation, he stated in part as follows:

> I will further advise you Sgt. Gary Webster that if you commit another serious breech [sic] of Rules and Regulations of this Police Department, it would be my recommendation that you should be dismissed from employment with the Torrington Police Department and the Town of Torrington.

As seen, this "probation" in no way relates to any view that Sgt. Webster was a probationary employee. No one held such a view.

■ The court finds that the defendants fully complied with the requirements of *Loudermill* in terminating Sgt. Webster. His ability to respond to the charges is seen by the detailed explanation provided in his six-page written report. In addition, he was given an opportunity to further speak with Chief Janes the following Monday. Janes Deposition at 30. The court finds that Sgt. Webster has failed to raise a genuine issue of material fact as to whether any defendant deprived him of either a property or liberty interest. For an additional reason, the court further finds that the Town of Torrington is entitled to summary judgment.

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court concluded "that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690, 98 S.Ct. at 2035 (emphasis in original). Before liability could be imposed, however, the Court required a showing that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. The court rejected respondeat superior as a basis for municipal liability under § 1983, concluding that "a municipality cannot be held liable *solely* because it employs a tortfeasor...." *Id.* (emphasis in original). Otherwise stated, "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (emphasis in original) (this quote comes from Part II A of the opinion, which five justices joined). A municipality is liable for acts that it has sufficiently sanctioned or ordered. *Id.*

2. Gary Webster testified to one oral reprimand for apparently sarcastically writing "ask the records technician" in a bulletin. Webster Deposition at 15. He testified that he remembered two written reprimands—one for dress appearance, the other for writing a "comical" remark on the board. *Id.* at 16. Finally he testified that he had twice been suspended with pay— first for an off-duty fight in 1980 or 1981 in the presence of minor females who were drinking alcohol, and second, for the Paul Servantez incident. *Id.* at 18–19.

The Torrington Town Council in an open meeting approved Standard Operating Procedures for the Torrington Police Department, which were submitted by Chief Reeves. Mitchell Deposition at 14–15. Paragraph 7 of the SOPs provides as follows:

*General Requirement*

A. An appropriate inquiry will be made to determine and document the facts before an official reprimand, notice or proposed disciplinary action or notice of proposed adverse action is issued. A primi facea [sic] case will exist before a disciplinary or adverse action is initiated. Such an inquiry will bring the issues into sharp focus, afford the member or employee to explain their position, and possibly eliminate any need for formal disciplinary action. Pre-action inquiries will be conducted by the Chief or his appointee.

B. *Specificity of Charges*—An official reprimand and notice of proposed disciplinary or adverse action will state the reasons supporting the reprimand or proposed action, specifically and in detail including names, times, places, dates, etc. The letter of reprimand or notice will be sufficiently detailed so that an individual unacquainted with the facts and circumstances pertaining can obtain from it a clear understanding of reasons for the reprimand or the proposed action. Statements of conclusions such as, you are guilty of disorderly conduct, without supporting details do not meet the requirements of specificity. The notice will also include the dates and type of disciplinary action and offense, if any, of the employee or member's past record which is relied upon to support the severity of the proposed action.

C. *Records*—All disciplinary and adverse actions except oral admonishments, will be reflected in the affected member's or employee's personnel folder. Official reprimands will be retained for a period of two years, at which time they will be removed.

The court believes that this required inquiry and notice would satisfy the requirements of *Loudermill*. In approving the SOPs of the police department, the town council expressly required the police chief to conduct such an inquiry. To impose liability on the town for a chief's failure to conduct this inquiry (and the court again states that both Chief Reeves and Chief Janes did conduct such an inquiry in this case) would be to impose liability for respondeat superior.

### Liberty Interest

■ To succeed on his claim, plaintiff must point to a stigmatizing statement that was publicly made. *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Dickeson v. Quarberg*, 844 F.2d 1435, 1439 (10th Cir.1988); *Lentsch v. Marshall*, 741 F.2d 301, 304 (10th Cir.1984). Plaintiff must further show that the published information was false. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (citing *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984)). Sgt. Webster has made neither showing.

### Breach of Contract

■ Sgt. Webster has alleged a state law claim for breach of contract based upon the Town of Torrington's Personnel Rules and Regulations and the Torrington Police Department's Standard Operating Procedures. Because the state and federal claims "derive from a common nucleus of operative fact," this court had power to hear both state and federal claims, if in its discretion it chose to do so. Pursuant to this order, the court has dismissed all federal claims. In such a circumstance, dismissal of pendent claims may be justified even during the trial. The Supreme Court has stated that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before the trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). *See also Central National*

*Bank v. Rainbolt,* 720 F.2d 1183, 1187 (10th Cir.1983). Sgt. Webster may, if he chooses, pursue his state breach of contract claim in state court.

IT IS HEREBY ORDERED that all motions for summary judgment by defendants are GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's pendent state law claim for breach of contract is DISMISSED.