KATHERINE KIMMERLE, Respondent, *v.* NEW YORK EVENING JOURNAL, INC., Appellant.

(Argued April 13, 1933; decided May 23, 1933.)

*Charles Henry* and *Charles C. Smith* for appellant.

*Edward S. Blackstone* for respondent.

CROUCH, J.   The action is for libel.   The first cause of action as stated in the complaint has been held sufficient. The question of its sufficiency has been certified to this court.   The answer depends solely upon whether the following words which " on the 2d day of September,

1931, the defendant in its newspaper republished of and concerning the plaintiff," are libelous *per se:*

" WEDS SISTER-IN-LAW.

" She accepted him and on January 16, 1905, they were married. Five days later Hoch was courting Mrs. Catherine Kimmerly in New York, in a rooming house she conducted, in 47th Street at Tenth Avenue.

" Mrs. Fisher complained to Chicago police about the disappearance of her husband. This report called attention to his previous marriage and his wife's death. Police exhumed the body. Poison was found. The dirty blood-smeared record he'd left behind came quickly to light.

" The alarm went out for Hoch as a murderer.

" Detective James J. O'Neill, a rookie of the W. 47th St. police station, turned Hoch in. It was chance that led him to the rooming house. He noticed two new trunks being taken in. He inquired about their ownership. He learned they belonged to a man after the description of Hoch. He won Mrs. Kimmerle's confidence. He went to the house one night when Hoch was downstairs. He stumbled, purposely entering the parlor. He fell against the wily German, stripped him of the pistol he had in a dressing gown pocket.

" The arch fiend was trapped.

" Hoch was strung from the gallows in Chicago, February 23, 1906."

We must take this somewhat cryptic narrative as it appears in the complaint, disregarding the explanatory matter in the briefs. We may infer that the alleged libel is a republication of part of an old news article at some time appearing in defendant's newspaper. We may also infer that the entire article described the criminal career of one Hoch.

It has been held that the pleading was sufficient because the purport of the whole article was such as to disgrace the plaintiff and to cause her shame among those who knew her.

The law of defamation is concerned only with injuries to one's reputation. Except to the limited extent provided by statute (Civil Rights Law [Cons. Laws, ch. 6], § 50), there is no right of privacy. (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538.) Written words, the effect of which is to invade privacy and to bring undesired notoriety, are without remedy, unless they also appreciably affect reputation. This is the domain, not of positive law, but of obedience to the unenforceable. (" Law and Manners " by Lord Moulton, Vol. 134 The Atlantic Monthly [July, 1924], 1.) From such harms one is protected only by the code of common decency.

Reputation is said in a general way to be injured by words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society. (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, 242 N. Y. 208.)

We shall assume, although it is not alleged, that widespread notoriety came to the plaintiff from the publication in question and that she suffered greatly as a result. But there must be something more than that to make it libelous. Considered and weighed " in the minds of right-thinking persons " (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, *supra*), or as elsewhere expressed, " in the minds of ordinary, just and reasonable citizens " (*Mycroft* v. *Sleight*, [1921] 90 L. J. K. B. 883, 37 Times Law Rep. 646, 648), do the words published by defendant tend to expose plaintiff to any of the evil results catalogued in the general statement above? All that the article says about the plaintiff is that she conducted a rooming house in New York and was there courted by Hoch five days after he had married another woman in Chicago. Hoch is described, in current journalese, as a " murderer " and " an arch fiend," who had " left a dirty, blood-stained

record behind " him in Chicago, where later he " was strung from the gallows," after being captured at plaintiff's rooming house, where he was staying, by a " rookie " detective, who had won plaintiff's confidence.

" Courting " is a word of vague content and may include varied conduct. But it does not imply immoral relations, nor did its use in the article impute such relations to plaintiff. (Cf. *Horton* v. *Binghamton Press Co.*, 122 App. Div. 332.) There is not even an insinuation that plaintiff knew or had reason to know anything wrong about the man who was courting her, much less that she was an accessory to his crimes. The other reference to plaintiff is that the detective, on the track of Hoch, won her confidence. What that means is obscure, unless the text following permits an inference that she co-operated with the detective in the identification and capture of Hoch.

Without a suggestion in the article to the discredit of plaintiff, how could any just and right-thinking person reading it entertain any feelings except regret and sympathy for plaintiff? Embarrassment and discomfort no doubt came to her from the publication, as they would to any decent woman under like circumstances. Her own reaction, however, has no bearing upon her reputation. That rests entirely upon the reactions of others. We are unable to find anything in this article which could appreciably injure plaintiff's reputation.

The orders should be reversed, with costs in all courts, the motion to dismiss the first cause of action alleged in the complaint granted, with costs, and the question certified answered in the negative.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Ordered accordingly.