## GRANT v. READER'S DIGEST ASS'N, Inc.

### No. 46.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1945.

Writ of Certiorari Denied Jan. 28, 1946.

See 66 S.Ct. 492.

734

Osmond K. Fraenkel, of New York City, for appellant.

Patrick H. Sullivan, of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing a complaint in libel for insufficiency in law upon its face. The complaint alleged that the plaintiff was a Massachusetts lawyer, living in that state; that the defendant, a New York corporation, published a periodical of general circulation, read by lawyers, judges and the general public; and that one issue of the periodical contained an article entitled "I Object To My Union in Politics," in which the following passage appeared:

"And another thing. In my state the Political Action Committee has hired as its legislative agent one, Sidney S. Grant, who but recently was a legislative representative for the Massachusetts Communist Party."

The innuendo then alleged that this passage charged the plaintiff with having represented the Communist Party in Massachusetts as its legislative agent, which was untrue and malicious. Two questions arise: (1) What meaning the jury might attribute to the words; (2) whether the meaning so attributed was libellous. So far as the wrong consisted of publishing the article in New York, the decisions of the courts of that state are authoritative for us under now familiar principles. As to publication in another state, a question might arise whether we must follow the decisions of that state or any decisions of New York which determined what effect in such cases the courts of New York give to the decisions of another state. No such question comes up upon this motion; and we leave it open. The innuendo added nothing to the meaning of the words, and, indeed, could not. Hays v. American Defense Society, 252 N. Y. 266, 169 N.E. 380. However, although the words did not say that the plaintiff was a member of the Communist Party, they did say that he had acted on its behalf, and we think that a jury might in addition find that they implied that he was in general sympathy with its objects and methods. The last conclusion does indeed involve the assumption that the Communist Party would not retain as its "legislative representative" a person who was not in general accord with its purposes; but that inference is reasonable and was pretty plainly what the author wished readers to draw from his words. The case therefore turns upon whether it is libellous in New York to write of a lawyer that he has acted as agent of the Communist Party, and is a believer in its aims and methods.

The interest at stake in all defamation is concededly the reputation of the person assailed; and any moral obliquity of the opinions of those in whose minds the words might lessen that reputation, would normally be relevant only in mitigation of damages. A man may value his reputation even among those who do not embrace the prevailing moral standards; and it would seem that the jury should be allowed to appraise how far he should be indemnified for the disesteem of such persons. That is the usual rule. Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554,

53 L.Ed. 960, 16 Ann.Cas. 1075; Restatement of Torts, § 559. The New York decisions define libel, in accordance with the usual rubric, as consisting of utterances which arouse "hatred, contempt, scorn, obloquy or shame," and the like. Triggs v. Sun Publishing & Printing Ass'n, 179 N.Y. 144, 153, 71 N.E. 739, 66 L.R.A. 612, 103 Am.St.Rep. 841, 1 Ann.Cas. 326; Sydney v. MacFadden Newspaper Publishing Corp., 242 N.Y. 208, 211, 212, 151 N.E. 209, 44 A.L.R. 1419; Kimmerle v. New York Evening Journal, Inc., 262 N.Y. 99, 102, 186 N.E. 217; Katapodis v. Brooklyn Spectator, Inc., 287 N.Y. 17, 20, 38 N.E.2d 112; Balabanoff v. Hearst Consolidated Publications, 294 N.Y. 351, 356, 62 N.E.2d 599; Sweeney v. Schenectady Union Publishing Co., 2 Cir., 122 F.2d 288. However, the opinions at times seem to make it a condition that to be actionable the words must be such as would so affect "right-thinking" people; and in Kimmerle v. New York Evening Journal, Inc., supra, 262 N.Y. 99, 102, 103, 186 N.E. 217 that was the turning point of the decision. The same limitation has apparently been recognized in England (Mycroft v. Sleight, 90 L.J.K.B. 883); and it is fairly plain that there must come a point where that is true. As was said in Mawe v. Piggott, Irish Rep. 4 Comm.Law, 54, 62, among those "who were themselves criminal or sympathized with crime," it would expose one "to great odium to represent him as an informer or prosecutor or otherwise aiding in the detection of crime"; yet certainly the words would not be actionable. Be that as it may, in New York if the exception covers more than such a case, it does not go far enough to excuse the utterance at bar. Katapodis v. Brooklyn Spectator, Inc., supra (287 N.Y. 17, 38 N.E.2d 112), following the old case of Moffatt v. Cauldwell, 3 Hun 26, 5 T. & C. 256, held that the imputation of extreme poverty might be actionable; although certainly "right-thinking" people ought not shun, or despise, or otherwise condemn one because he is poor. Indeed, the only declaration of the Court of Appeals (Moore v. Francis, 121 N.Y. 199, 205, 206, 23 N.E. 1127, 8 L.R.A. 214, 18 Am.St.Rep. 810, 30 St.R. 467) leaves it still open whether it is not libellous to say that a man is insane. Southwick v. Stevens, 10 John., N.Y., 443; Perkins v. Mitchell, 31 Barb., N.Y., 461, 465. Shelby v. Sun Publishing & Printing

Ass'n, 38 Hun 474, affirmed on opinion below, 109 N.Y. 611, 15 N.E. 895; and Martin v. Press Publishing Co., 93 App.Div. 531, 87 N.Y.S. 859, are other instances where the words would not have caused "right-thinking" people to regard the plaintiff with scorn, aversion or hostility. We do not believe, therefore, that we need say whether "right-thinking" people would harbor similar feelings toward a lawyer, because he had been an agent for the Communist Party, or was a sympathizer with its aims and means. It is enough if there be some, as there certainly are, who would feel so, even though they would be "wrong-thinking" people if they did. So far as Kimmerle v. New York Evening Journal, Inc., supra (262 N.Y. 99, 186 N.E. 217), is to the contrary, we cannot think that it survives Katapodis v. Brooklyn Spectator, Inc., supra (287 N.Y. 17, 38 N.E.2d 112).

The lower courts in New York have passed on almost the same question in three cases. In Garriga v. Richfield, 174 Misc. 315, 20 N.Y.S.2d 544, Pecora, J., held that it was not libellous to say that a man was a Communist; in the next year in Levy v. Gelber, 175 Misc. 746, 25 N.Y.S.2d 148, Hofstadter, J., held otherwise. That perhaps left the answer open; but Boudin v. Tishman, 264 App.Div. 842, 35 N.Y.S.2d 760, was an unescapable ruling, although no opinion was written. Being the last decision of the state courts, it is conclusive upon us, unless there is a difference between saying that a man is a Communist and saying that he is an agent for the Party or sympathizes with its objects and methods. Any difference is one of degree only: those who would take it ill of a lawyer that he was a member of the Party, might no doubt take it less so if he were only what is called a "fellow-traveler"; but, since the basis for the reproach ordinarily lies in some supposed threat to our institutions, those who fear that threat are not likely to believe that it is limited to party members. Indeed, it is not uncommon for them to feel less concern at avowed propaganda than at what they regard as the insidious spread of the dreaded doctrines by those who only dally and coquette with them, and have not the courage openly to proclaim themselves.

Judgment reversed; cause remanded.