WILLY POGANY, Plaintiff, *v.* WHITTAKER CHAMBERS et al.,
Defendants.

Supreme Court, Trial Term, New York County, October 5, 1954.

*William F. McNulty* for Whittaker Chambers, defendant.

*Weil, Gotshal & Manges* for Random House, Inc., defendant.

*William A. Hyman* for plaintiff.

McNALLY, J.  A jury has been sworn, the plaintiff has opened, and both defendants having waived opening now move to dismiss in this action for alleged libel based upon a reference to plaintiff in a book entitled " Witness ".  He seeks compensatory and exemplary damages in the sum of $1,000,000.  No special damages are alleged.  Plaintiff claims to have been libeled in the book entitled " Witness " written by the defendant Chambers and published by the defendant Random House, Inc.  The sole reference to plaintiff in the book is that contained at page 214, which reads as follows: " I did most of my reading about the Hungarian Revolution at my desk in the newspaper room of the New York Public Library.  Among other books I read *Class Struggles and the Dictatorship of the Proletariat in Hungary.*  Its author was Bela Szanto who had been assistant commissar for war in the Hungarian Soviet Government.  Some years later, I was to see the commissar for war himself, Joseph Pogany, the brother of Willi Pogany, long a scene designer at the Metropolitan Opera House.  Under the name of John Pepper, Joseph Pogany was the Communist International's secret representative to the American Communist Party ".  Plaintiff claims this statement to be false and for the purposes of this motion it is conceded to be false.  The question thus presented by the motion is whether the false reference to plaintiff as the brother of a notorious communist constitutes a libel in the absence of any statement in the book attributing to plaintiff any communist sympathies or ties.  In *Kimmerle* v. *New York Evening Journal*

(262 N. Y. 99), the Court of Appeals sets forth a yardstick for the measurement of whether written words are libelous. The court there said (p. 102): " Written words, the effect of which is to invade privacy and to bring undesired notoriety, are without remedy, unless they also appreciably affect reputation. * * * Reputation is said in a general way to be injured by words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society. (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, 242 N. Y. 208.) "

In applying that test, the Court of Appeals in the *Kimmerle* case (*supra*) dismissed the complaint against the defendant who had published an article about a notorious murderer. The article stated that the plaintiff was " courted " by the murderer. Plaintiff, alleging the falsity of the statement, claimed that defendant with actual malice published the statement, thereby injuring her reputation and holding her up to ridicule. The Court of Appeals, in dismissing the complaint, said (pp. 102–103): " We shall assume, although it is not alleged, that widespread notoriety came to the plaintiff from the publication in question and that she suffered greatly as a result. But there must be something more than that to make it libelous. * * * Without a suggestion in the article to the discredit of plaintiff, how could any just and right-thinking person reading it entertain any feelings except regret and sympathy for plaintiff? Embarrassment and discomfort no doubt came to her from the publication, as they would to any decent woman under like circumstances. Her own reaction, however, has no bearing upon her reputation. That rests entirely upon the reactions of others. We are unable to find anything in this article which could appreciably injure plaintiff's reputation."

Some years after the *Kimmerle* case, the Court of Appeals reached the same conclusion in *Rose* v. *Daily Mirror* (284 N. Y. 335). Briefly stated, the facts in the *Rose* case can be summarized as follows: The plaintiff Anna Rose was the wife of one Jack Rose. Upon the latter's death, the defendant erroneously identified the deceased as " Baldy Jack Rose ", a self-confessed murderer. The article named the plaintiff as the surviving wife of this notorious criminal. Plaintiff based her complaint on the false statement that she was the widow of " Baldy Jack Rose ", a criminal. The Court of Appeals affirmed the dismissal of the complaint holding that in New York where

there is no direct reflection upon a relative, there is no cause of action for defamation even though a deceased relative has been libeled. The court said it would not extend the law of libel as it has been generally understood in this State for many years.

At about the same time that the Court of Appeals decided the *Rose* case (*supra*), the United States District Court for the Southern District of New York also held that where an article erroneously refers to a plaintiff as a relative by way of identification and " not for the purpose of ascribing to·him the participation in the activity which would have held him up to disgrace or contempt ", no cause of action for libel lies, even though the plaintiff was " embarrassed and annoyed by the publication ". (*Tesreau* v. *Collegian Press* [1939], not officially reported, Index No. L. 70–68.)

The court is not unmindful of the decision in *Mencher* v. *Chesley* (297 N. Y. 94). The prime question presented for decision there was (p. 100): " Whether it is likewise libelous to characterize one as communist or as communist sympathizer is the prime question for decision." In the instant case the plaintiff is not characterized as a communist or as a communist sympathizer. The alleged libel is that he was the brother of a communist.

Within the holdings of the *Kimmerle* case (262 N. Y. 99, *supra*), and the *Rose* case (*supra*), the complaint fails to state a cause of action and must be dismissed. This disposition is without prejudice to any action the plaintiff may be advised to take on a demonstration of special damages, if any, sustained by him in consequence of the false statement published in respect of him.