**Deanna LENTSCH, Plaintiff-Appellee,**

v.

**Dean MARSHALL, Mayor of the City of Sheridan, Wyoming; and Roger Krout, Chief of Police, City of Sheridan, Wyoming, Defendants-Appellants.**

No. 83–1343.

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1984.

Dan B. Riggs and Jeffrey J. Gonda of Lonabaugh & Riggs, Sheridan, Wyo., for defendants-appellants.

James N. Wolfe of Wolfe & Tate, Sheridan, Wyo., for plaintiff-appellee.

Thomas S. Smith and Kathleen A. Hunt of Smith, Stanfield & Scott, Laramie, Wyo., filed an amicus curiae brief on behalf of the Wyo. Ass'n of Municipalities.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff, Deanna Lentsch, brought this action under 42 U.S.C. § 1983 against Dean Marshall, Roger Krout, and the City of Sheridan, Wyoming, for damages arising from her discharge from her job as a dispatcher for the Sheridan Police Department. Marshall is the Mayor of Sheridan and Krout is its Chief of Police. The parties stipulated to most of the relevant facts. The trial court submitted all issues to a jury. The jury awarded plaintiff $25,-000 against Mayor Marshall and Chief Krout but absolved the City of Sheridan of liability. The court also awarded plaintiff $8,686.96 in attorney's fees. Marshall and Krout appeal (hereinafter defendants).

Plaintiff was employed as a dispatcher for the Sheridan Police Department from July 1977 through January 1982. On January 19, 1982, she was scheduled to work from 4:00 a.m. to noon. The shift commander that day was Lieutenant John Mitchell. At approximately 3:20 a.m., plaintiff called Mitchell at his home to tell him that she would be late for work, explaining that she needed to stop at her mother's house to shower because her water heater had broken. Mitchell told plaintiff that her tardiness would pose no problems. Mitchell arrived at work at approximately 3:40 a.m. and punched in both his own and plaintiff's time cards. Plaintiff did not arrive at work until between 4:30 and 4:45 a.m.

Upon her arrival, Mitchell told plaintiff that he had already punched in her time card. Mitchell also told her that she should work through her lunch break to make up her lost time. She did so. Plaintiff did not tell anyone that Mitchell had punched in her time card. She was paid for working a full eight-hour shift that day.

Chief Krout learned of plaintiff's tardiness because another police officer reported seeing her driving fast to work that morning and noticing that she was approximately thirty minutes late. Krout's secretary checked plaintiff's time card and found that it had been punched in at approximately 3:40 a.m. Krout then decided to terminate plaintiff and Mitchell. After conferring with Mayor Marshall, Krout informed plaintiff on January 22, 1982, that she was discharged. Krout showed her a copy of her separation notice, which stated, "Time card filled in by other employee when employee not actually at work."

After her termination, plaintiff met with Mayor Marshall to discuss the matter. Plaintiff explained the circumstances of her discharge and why she thought that it was unfair. The Mayor told plaintiff that he would meet with Krout and reconsider her discharge. But after doing so, Marshall called plaintiff and told her that he and Krout would adhere to the original decision to fire her.

Plaintiff's counsel then presented a claim to the Sheridan City Council seeking damages and reinstatement for plaintiff. He argued that the City should reconsider plaintiff's firing because Mitchell punched in her card without her knowledge. Chief Krout refused to discuss the claim in open session because of the threat of legal action. The City Council voted to turn plaintiff's claim over to the city attorney for review. The city attorney concluded that the City had properly terminated plaintiff, and the City Council denied plaintiff's claim. This suit followed.

I

Defendants contend that they did not deprive plaintiff of a liberty interest. The liberty interest that due process protects includes the individual's freedom to earn a living. *See Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). When a public employer, in discharging an employee, makes charges that injure the employee's

reputation or impose a stigma that forecloses the employee's freedom to take advantage of other employment opportunities, due process requires that the employee receive an opportunity to clear his or her name. *Id.* at 573–74, 92 S.Ct. at 2707–2708. Specifically, the employee must show that he or she was stigmatized, *id.*, that the stigmatization was in connection with the discharge, *Paul v. Davis*, 424 U.S. 693, 701–02, 96 S.Ct. 1155, 1160–1161, 47 L.Ed.2d 405 (1976), and that the charges were made public. *Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684 (1976).

■ Plaintiff argues that defendants deprived her of a liberty interest when Chief Krout characterized plaintiff's and Lieutenant Mitchell's conduct as "dishonest" and newspapers published Krout's comments. We acknowledge that a public accusation of dishonesty in connection with a discharge is sufficiently stigmatizing to invoke the procedural protections of due process. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. Krout made this statement, however, while testifying as a witness before a civil service commission hearing regarding Mitchell's discharge. Since witnesses in judicial proceedings are absolutely immune from suits for damages under § 1983, *Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), defendants contend that by analogy Marshall should enjoy absolute immunity for his testimony at the commission hearing.

In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court addressed the question of when the absolute immunity that certain participants in judicial proceedings enjoy should extend to persons performing similar functions in administrative adjudicative proceedings. The Court noted that some participants in the judicial process—including judges, advocates, and witnesses—require absolute immunity to perform their functions without harassment or intimidation. *Id.* at 512, 98 S.Ct. at 2913. It declared that, "safeguards built into the judicial process tend to reduce the need for

private damage actions as a means of controlling unconstitutional conduct." *Id.* Witnesses, for instance, are "subject to the rigors of cross-examination and the penalty of perjury." *Id.* The Court found that these policies apply with equal force to adjudication within federal agencies. The Court reasoned that the "conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court.... Moreover, federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process." *Id.* at 513, 98 S.Ct. at 2914. Thus, the Court concluded that individuals in federal administrative adjudication who are "functionally comparable" to judges and prosecutors are absolutely immune from suits for damages. *Id.* at 513–17, 98 S.Ct. at 2914–2916.

■ We conclude that the civil service commission hearing in the instant case possesses enough of the characteristics of the judicial process that witnesses in such hearings should be absolutely immune from suits for damages arising out of their testimony. Under Wyo.Stat. § 15–5–113, a discharged police officer is entitled to a hearing before the commission to review his discharge. Civil service commissions must comply with the Wyoming Administrative Procedure Act, *see Rolfes v. Wyoming ex rel. Burt*, 464 P.2d 531 (Wyo.1970). Witnesses at commission hearings testify under oath, Wyo.Stat. § 9–4–107, and are subject to cross-examination. *Id.* at § 9–4–108. Thus, commission hearings and the judicial process possess the same safeguards that diminish the danger of untruthful or defamatory testimony. *See Butz*, 438 U.S. at 512, 98 S.Ct. at 2913. Since a person's livelihood and the public interest are at stake, the civil service commission should review the discharge on a complete and accurate record of the facts. The prospect of subsequent damages liability might discourage witnesses from coming forward to testify or encourage them to distort their testimony. *See Briscoe*, 460 U.S. at 333, 103 S.Ct. at 1114. We there-

fore hold that Marshall is absolutely immune from suits for damages arising out of his testimony before the commission. *Cf. Briggs v. Goodwin*, 712 F.2d 1444 (D.C. Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (witness before grand jury entitled to absolute immunity); *Brown v. DeBruhl*, 468 F.Supp. 513, 520 (D.S.C.1979) (witness before state agency immune).

■ Alternatively, plaintiff contends that defendants deprived her of a liberty interest because they placed her separation notice in her employment file and her prospective employers will have access to that file. The separation notice states, "Time card filled in by other employee when employee not actually at work." In order to state a claim for deprivation of a liberty interest under 42 U.S.C. § 1983, the plaintiff must allege that the stigmatizing or defamatory statement is false. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). Plaintiff admits that Lieutenant Mitchell filled in her time card when she was not at work. We therefore hold that plaintiff presented no evidence that defendants deprived plaintiff of a liberty interest.

## II

■ Defendants also argue that plaintiff lacked a property interest in her job as a dispatcher. We must refer to state law in determining the sufficiency of the claim of entitlement. *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077. "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A contract or ordinance, for instance, may create a property interest in employment. *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077.

■ Plaintiff contends that Sheridan City Ordinance No. 1098 gave her a property interest in her job. That ordinance provides, "The appointing authority may dismiss an employee for misconduct, ineffici-

ency or other just cause." It does not specify any procedures that the city must follow in terminating an employee. Generally, a government employee who may be dismissed only "for cause" has a protected property interest, whereas one who may be dismissed "at will" does not. *See Bishop*, 426 U.S. at 344–47, 96 S.Ct. at 2077–2079. The ordinance here is somewhat ambiguous, since it does not expressly provide that the City may terminate an employee "only" for the reasons stated in the ordinance. *Cf. id.* at 345, 96 S.Ct. at 2077. Moreover, we are not aware of any Wyoming state court decisions interpreting this ordinance or similar statutory provisions. However, when, as here, an ordinance merely specifies reasons for which an employee may be discharged, we think that the most reasonable construction of that ordinance is that an employee may be discharged only for those reasons. *See, e.g., Glenn v. Newman*, 614 F.2d 467, 471 (5th Cir.1980); *Kennedy v. Robb*, 547 F.2d 408, 411–13 (8th Cir.1976), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). This construction is particularly compelling in light of the introduction to the ordinance, which declares, "This ordinance is adopted for the purpose of establishing a policy of fair and equitable personnel procedures in recruiting, hiring, promoting and retaining employees who perform their assigned duties satisfactorily." We therefore hold that plaintiff had a property interest in her employment.

## III

■ Defendants contend that in any event plaintiff's meetings with Krout, Marshall, and the City Council satisfied the requirements of due process. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). At a minimum, however, due process requires that the discharged employee receive adequate notice of the reasons for the termination and a meaningful opportunity to rebut the charges. *Rosew-*

*itz v. Latting,* 689 F.2d 175, 177 (10th Cir.1982); *see Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950). The only reason that defendants gave plaintiff for her discharge was Chief Krout's explanation that Lieutenant Mitchell had punched in her time card. Yet Mayor Marshall, who was ultimately responsible for firing plaintiff, testified at trial that the incident with Mitchell was only one of a number of reasons for which he fired plaintiff. Thus, since plaintiff never knew precisely why she was discharged, we hold that she did not receive the reasonable notice of the charges against her that due process requires. *See McGhee v. Draper,* 564 F.2d 902, 911 (10th Cir.1977).

### IV

Finally, defendants contend that the trial court erred in refusing to permit Mary Showers, one of plaintiff's coworkers, to testify. Plaintiff testified that she had never asked anyone to punch in her time card. Defendants proposed to call Showers to testify that plaintiff asked her several times to punch in plaintiff's time card when plaintiff was not at work. The trial court refused to permit the testimony because Showers was not listed as a witness in the pre-trial order.

The decision to permit or exclude testimony by witnesses not listed in a pre-trial order rests with the sound discretion of the trial judge. *James v. Newspaper Agency Corp.,* 591 F.2d 579, 582 (10th Cir.1979). The question whether or not plaintiff ever asked others to punch in her time card is entirely irrelevant to the issues in this case. We therefore find no abuse of discretion.

We affirm the jury's finding that defendants deprived plaintiff of an interest in property without due process. However, because we reverse its finding that defendants deprived plaintiff of an interest in liberty, we must remand the case for a new trial on the issue of damages. The trial court permitted the jury to award plaintiff damages for humiliation, embarrassment, and emotional suffering. In light of our holding, the jury should have based its award only on the mental and emotional distress that plaintiff suffered from the denial of her property interest. "We cannot say, as a matter of law, that an individual will experience the same intensity and degree of suffering when a procedural deprivation impairs both a liberty and property interest as when it impairs only a property interest." *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 781 (9th Cir. 1982).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.