**Duane H. BLANTON, Appellee,**

v.

**HOUSING AUTHORITY OF the CITY OF NORMAN, A Municipal Authority, Appellant.**

No. 65963.

Supreme Court of Oklahoma.

April 17, 1990.

Rehearing Denied July 3, 1990.

William P. Bleakley, Linda Maria Meoli, Groves, Bleakley & Tague, Oklahoma City, for appellant.

Terry Guy Shipley, Noble, for appellee.

DOOLIN, Justice.

This is an appeal by the Housing Authority of the City of Norman, hereinafter **"Authority"**, from the District Court of Cleveland County, Oklahoma. Duane H. Blanton, hereinafter **"Blanton"**, brought suit against the Authority for an alleged wrongful discharge from employment. Judgment was entered for Blanton following a jury verdict in his favor. Blanton was awarded $75,000.00 in actual damages and $44,449.00 for attorney fees. The Authority appeals from this judgment.

The function of the Authority is to set policy with respect to the public housing under its jurisdiction. Blanton was hired as the executive director in September of 1981, to administer this policy. He fulfilled this function by performing certain duties, which included hiring and supervising employees, overseeing the operations of Authority projects and reporting the business of the Authority to its Board of Commissioners, hereinafter **"Board"**.

On March 18, 1985, the Board voted to fire Blanton. Blanton alleges his dismissal was without notice and due to malice and ill-will on the part of certain members of the Board. Blanton claims the Authority had agreed that his employment would continue as long as his performance was satisfactory, and that both parties foresaw a long and continuing relationship. Blanton contends the agreement gave him a significant property interest in continued employment and therefore his wrongful termination deprived him of vested property rights without due process of law. In his second cause of action Blanton alleges the firing breached a covenant of good faith and fair dealing implied by law in his contract of employment. A third cause of action against one of the commissioners for defamation was dismissed before trial.

On appeal, the Authority argues it was error for the trial court to overrule its motions at the close of all evidence and to instruct the jury on the issue of good faith and fair dealing. The Authority's specific arguments are threefold: **First,** the Authority contends that Blanton possessed no interest in continued employment. **Second,** it contends that because Blanton did not assert a liberty interest issue in either the petition or pre-trial statement, the court should not have considered the issue. Finally, the Authority argues the evidence is insufficient to support the finding of a breach of the implied covenant of good faith and fair dealing. The Authority further alleges the damages awarded to Blanton for future earnings were contrary to law and the award of attorney fees to Blanton was erroneous.

## I.

■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of life, liberty and property.[1] When protected rights are implicated, the right to some kind of prior hearing is paramount.[2] However, the range of interests protected by procedural due process is not infinite.[3] Property rights are not created by the Constitution, but by independent sources, such as state laws, which also define their dimensions.[4] The commissioners themselves have a three-year property right in their positions pursuant to 63 O.S.1981, § 1058(A).[5] However, while 63 O.S.1981, § 1058(D) allows the Authority to employ an executive director, there is no statute which grants a property interest to the executive director.[6]

The commissioners can only be removed for cause and are entitled to a post-termination hearing under 63 O.A.1981, § 1060.[7] Blanton claims he is entitled to the same treatment. At trial Blanton relied on *Cleveland Board of Education v. Loudermill*,[8] which says once a state has conferred an expected interest in an employee through its civil service system, then such an employee can only be fired for cause, and is entitled to due process.[9] Blanton argues because he was told that his employment would continue for as long as his work was satisfactory, a contract was created which implied he could only be fired for just cause and because of this he was entitled to due process.

The Authority claims to have had just cause to fire Blanton, but argues that such an assertion does not act as an admission that they could not fire him without just cause. The Authority further denies the existence of a "just cause only" term in Blanton's employment contract.

The Tenth Circuit Court of Appeals addressed this issue in *Asbill v. Housing Authority of the Choctaw Nation*.[10] The court held that if a policy restricts the reasons for discharge of an employee to just cause shown, then the employee has a right to employment until such cause is shown.[11] Blanton attempted to prove there was such a policy from the language of his employment agreement stating he was to continue as directed so long as his work was satisfactory. This contention must fail.

The *Asbill* court held that unless the employee could prove substantive restrictions on the employing authority's power to discharge her, the employment must be considered to have been terminable at will.[12] Blanton simply has not offered sufficient evidence of a substantive restriction on the Authority's power to discharge him. The only evidence offered by Blanton is his statement about the discussions between him and Board at the time he was hired.

1. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972).

2. *Id.; Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113, 120 (1971).

3. *Roth*, 408 U.S. at 570, 92 S.Ct. at 2705, 33 L.Ed.2d at 557.

4. *Id.*

5. 63 O.S.1981, § 1058(A) provides in part: "... five persons shall be appointed as commissioners of the authority ... The term of office of each commissioner shall be for three (3) years ...".

6. 63 O.S.1981, § 1058(D) provides in part: "... An authority may employ an executive director, legal and technical experts and such other officers ... as it may require, and shall determine their qualifications, duties and compensation ...".

7. 63 O.S.1981, § 1060 provides in part: "For inefficiency, neglect of duty or misconduct [other reasons given] ... a commissioner of an authority may be removed ... but a commissioner shall be removed only after a hearing and after he shall have been given a copy of the charges at least ten (10) days prior to the hearing and had an opportunity to be heard ...".

8. 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

9. *Id.* at 543, 105 S.Ct. at 1493, 84 L.Ed.2d at 503.

10. 726 F.2d 1499 (10th Cir.1984).

11. *Asbill*, at 1502.

12. *Id.*

Blanton's argument centers around his testimony under direct examination at trial, wherein he states, "as long as my work was satisfactory, why, I would hope to retire from that position." Blanton went on to say that the Board expressed agreement with that view. However, we feel it is clear that discussions which may have occurred at Blanton's interview, without more, cannot be viewed as creating a substantive restriction on the Authority's power to dismiss him.

Absent evidence of a substantive restriction on the Board's power to dismiss Blanton or any statute conferring upon him a property right in continued employment, we hold Blanton's employment contract was terminable at will. As a result, Blanton possessed no constitutionally protected property interest in continued employment and it was error for the trial court to submit the claim to the jury.

## II.

The Authority's second proposition of error is that the jury was erroneously instructed on a liberty interest issue which was not asserted in Blanton's petition or pre-trial statement. The Authority contends that property and liberty interests are separate rights which must be pled individually. Because Blanton pled only a deprivation of a property interest, the Authority argues it was without notice to defend the liberty interest issue and it was wrong for the trial court to instruct the jury on the issue under the "umbrella of due process".

█ The Authority cites the Oklahoma Pleading Code, at 12 O.S.1984, § 2015(B) which governs the procedure to be used when issues are brought up at trial for the first time, and states in pertinent part:

> If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings or pre-trial confer-

ence order, the court may allow the pleadings or the pre-trial conference order to be amended and shall do so freely when the presentation of the merits of the action will be served thereby....

Blanton did not seek to amend his petition or pre-trial statement, but instead argued to the trial court that each interest need not be pled specifically because life, liberty and property interests are included when an allegation of a violation of due process is made. We must agree with this conclusion. Here, the petition filed by Blanton alleges facts which, if proven, would be sufficient to show a violation of his constitutionally protected liberty interest.

The Due Process Clause of the Fourteenth Amendment prevents any state from depriving any person of life, liberty and property without "due process" of law.[13] The clause is not capable of technical conception, and cannot be transformed into a fixed formula for strict application by the courts.[14] The interests protected interrelate to form one concept whose definition varies with every situation. Therefore, a plaintiff who pleads a due process violation is not required to plead, individually, the specific protections of life, liberty or property afforded by the due process clause.

The question now becomes what is the nature of such a violation and what kind and degree of evidence is necessary to withstand a motion for directed verdict.

█ This Court, like the Supreme Court of the United States, recognizes that an employee has a legitimate interest to seek other employment without being unfairly deprived of the liberty to do so.[15] Such an unfair infringement of an employee's liberty interest occurs when the circumstances of his or her discharge result in the publication of information which is *false and stigmatizing*, and which has the effect of cur-

---

**13.** U.S. Const. amend. XIV, § 1.

**14.** *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817, 849 (1951).

**15.** *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); and see *Asbill v. Housing Authority of the Choctaw Nation*, Note 10 *supra*.

tailing the employee's future freedom of choice or action.[16]

■ Having found Blanton's pleadings were sufficient to allow the introduction of evidence as to the alleged deprivation of his liberty interest in seeking future employment we must now decide whether that evidence supported the trial court's decision to overrule the Authority's motion for a directed verdict on this issue.

■ A motion for directed verdict is an end-of-trial functional equivalent of a demurrer to the evidence.[17] In ruling on a motion for directed verdict the trial court must search the pleadings for facts admitted as well as the evidence for facts proved to determine whether the evidence is sufficient to entitle the plaintiff to the relief asked.[18] The motion for directed verdict should be sustained unless it reasonably appears that plaintiff's injury was caused by some wrongful act of defendant in violation of a legal duty owing to plaintiff.[19]

In *Asbill, supra,* the 10th Circuit Court of Appeals clearly defined the kind of acts necessary to cause injury to a terminated employee's liberty interest in seeking future employment. To violate its duty not to unjustly impair the employee's liberty interest a discharging employer must not publish information which is false and stigmatizing.[20] The court went on to say:

> The Supreme Court has indicated that for statements to be stigmatizing they must rise to such a serious level as to place the employee's good name, reputation, honor, or integrity at stake. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2707 [33 L.Ed.2d 548] (1971). As an example, the Court has noted that a charge of dishonesty or immorality would be stigmatizing. *Id.* Such charges attach like a "badge of infamy" to an employee—how can they be satisfactorily explained or justified to future employers? Thompson's statements, on

the other hand, do not directly attack the character or integrity of Asbill. Rather, they indicate that Asbill disagreed with him on the question of his authority. Considering the circumstances, Asbill could explain this disagreement to future employers in a much more satisfactory manner than a statement denigrating her morality, credibility or integrity. It is true that the very need for explanation may make Asbill less desirable to some employers, but the Supreme Court has indicated that circumstances which make an employee "somewhat less attractive" to employers would hardly establish the kind of "foreclosure of opportunities amounting to a deprivation of liberty." *Id.* at 574 note 13, 92 S.Ct. at 2707 note 13.

The record here shows the published statements about Blanton's firing were that he disregarded the Board's authority, that he permitted an unauthorized employee to sign checks, that he taped telephone conversations with Board members and then played them for the amusement of his staff, and that he made purchases on behalf of the Authority from a company owned by his brother and that those purchases "could look bad to the public." One story cited a Board member as saying "Blanton was not accused of illegal actions or incompetency, but commissioners thought he used poor judgment." The only one of these allegations refuted by Blanton was that he played the tape recorded conversations for other than business reasons.

After careful review of the record at trial and considering the nature of the published statements about why Blanton was fired, we conclude that the evidence presented by him was not, in light of *Roth, supra,* sufficient to entitle him to the relief asked. The evidence did not reasonably support the allegation that the delay in Blanton's reemployment was caused by false and stig-

**16.** *Asbill, supra,* 1503.

**17.** *Right Way Cleaners v. Knappenberger,* 90 Okl. 277, 217 P. 399 (1923).

**18.** *Wiruth v. Hillcrest Memorial Hosp.,* 201 Okl. 607, 207 P.2d 782 (1949).

**19.** *Atchison Topeka and Santa Fe Ry. Co. v. Phillips,* 158 Okl. 141, 12 P.2d 908 (1932).

**20.** *Asbill,* at 1503.

matizing information published by Board members. The trial court, therefore, erred in overruling the Authority's motion for directed verdict on the liberty interest cause of action.

### III.

Blanton contends that even in at-will employment contracts, an employer may not fire an employee except for good cause shown. He claims that termination without cause constitutes a breach of the implied covenant of good faith and fair dealing. This argument must fail. In *Burk v. K–Mart Corp.*,[21] we held that assuming that a covenant of good faith and fair dealing is implicit in every at-will employment relation, the covenant does not operate to forbid employment severance except for good cause.[22]

■ Blanton relies on *Hall v. Farmers Insurance Exchange*,[23] to show he is entitled to damages for breach of the implied covenant of good faith and fair dealing. This reliance is misplaced. *Hall* is limited to its facts and is clearly distinguishable from the case at hand. In *Hall*, this Court held that a principal may not resort to the termination-at-will clause of an agency agreement for the purpose of depriving its agent of the "fruits of his labors."[24] In that case Hall was an insurance agent who asked for damages for the reasonable amount of renewal commission he reasonably expected to receive in the future. The court specifically noted: "he [Hall] did not seek, nor was he awarded compensation based on any speculation as to new insurance policies he might have sold."[25] This statement clearly shows the difference between *Hall* and the instant case. In *Hall*, the agent sought to recover the true fruits of his labor, commissions owed to him based on his pre-termination employment.

Blanton is clearly seeking to recover for future, unearned income. Therefore, the holding in *Hall* is not applicable to this case and we will not extend such a remedy to the case where one seeks to recover future, unearned income.

■ In so holding, we join the general view taken by the courts which have considered the question of whether a duty to terminate for good cause should be implied in every at-will contract.[26] This view is that no such duty should be imposed on at-will employers. As in *Burk*, we decline to impose upon employers the duty not to terminate an at-will employee in bad faith.[27] Therefore, it was error for the trial court to submit Blanton's claim for breach of the implied covenant of good faith and fair dealing to the jury.

We conclude that Blanton had no property right in continued employment, that he had no cause of action for bad-faith discharge, and that the evidence presented was insufficient to entitle him to relief for the deprivation of his liberty interest in seeking future employment. We must conclude, therefore, that there was no issue properly before the jury which could support a verdict in Blanton's favor.

The judgment of the trial court is therefore REVERSED, and judgment entered for appellant, Housing Authority of the City of Norman.

HARGRAVE, C.J., and HODGES, LAVENDER, and SIMMS, JJ., concur.

OPALA, V.C.J., concurs in judgment.

ALMA WILSON, KAUGER and SUMMERS, JJ., concur in part, dissent in part.

---

**21.** 770 P.2d 24 (Okl.1988).

**22.** *Id.* at 27, citing language in *Hinson v. Cameron*, 742 P.2d 549 (Okl.1987).

**23.** 713 P.2d 1027 (Okl.1985).

**24.** *Id.* at 1030.

**25.** *Id.* at 1031.

**26.** *See Pugh v. See's Candies, Inc.*, 116 Cal. App.3d 311, 171 Cal Rptr. 917 (1981); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834 (1983).

**27.** See also, *Hinson, supra*, Note 24, at 554.

OPALA, Vice Chief Justice, concurring in judgment.

I join the court in reversing today the nisi prius judgment for the plaintiff, which gave him recovery in an action founded, *inter alia,* on a § 1983 claim for deprivation of his liberty interest in public employment with the Housing Authority of the City of Norman [Authority].

The Due Process Clause of the 14th Amendment is deemed offended and the liberty interest protected by that fundamental-law norm impermissibly invaded when a nontenured public employee's discharge, which has a "stigmatizing" effect, leaves him (or her) without an opportunity to "clear his name" in a post-termination hearing.[1] Generally, a person's § 1983 liberty interest claim is not complete when the deprivation occurs "unless ... the state fails to provide due process."[2] Extant U.S. Supreme Court jurisprudence gives less than sure and meaningful guidance on the precise question to be answered here—Must a stigmatized nontenured public employee request an opportunity to clear his name before he may press a § 1983 claim for damages, or does the law itself demand a name-clearing hearing for a stigmatized employee under *all* circumstances? The U.S. Court of Appeals for the Fifth Circuit has held that a nontenured public employee's § 1983 claim for vindication of a deprived liberty interest is actionable *only after* his request for a post-termination hearing has been denied.[3] The jurisprudence of the Tenth Circuit appears, at best, inconclusive.[4]

Absent controlling federal Supreme Court precedent and without much guidance on the point from the Tenth Circuit jurisprudence,[5] I would adopt today an al-

1. Discharge from nontenured public employment under circumstances that put an employee's reputation, honor or integrity at stake gives rise to a protectible liberty interest in a procedural opportunity to clear the cloud cast upon one's good name. See *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 [1977]; *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 [1976]; *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 [1976]; *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 [1972]; *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 [1971]; *Cafeteria & Rest. Wkrs. U., Local 473 v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 [1961]; *Wieman v. Updegraff,* 344 U.S. 183, 191, 73 S.Ct. 215, 218, 97 L.Ed. 216 [1952].

2. *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 [1990].

3. *Rosenstein v. City of Dallas, Tex.,* 876 F.2d 392, 396 n. 8 [5th Cir.1989]; *In re Selcraig,* 705 F.2d 789, 796 [5th Cir.1983].

4. See *McGhee v. Draper,* 564 F.2d 902 [10th Cir.1977]; *McGhee v. Draper,* 639 F.2d 639 [10th Cir.1981].

As noted in the text, we are here without sure guidance either from the U.S. Supreme Court, the tribunal to which we look as a state court of last resort for authority on federal-law issues, or from the U.S. Court of Appeals for the Tenth Circuit, in whose jurisdiction we sit. The jurisprudence of the federal circuits is either inconclusive on the point in issue here or clearly favors the view that a demand for a name-clear-

ing hearing is a *sine qua non* of a § 1983 claim based on deprivation of a person's liberty interest.

(1) Fifth Circuit jurisprudence in *Rosenstein v. City of Dallas, Tex., supra* note 3 at 396 n. 8, holds that the "state deprives an employee of a liberty interest *only* when it denies his request for an opportunity to contest the charges and clear his name." (Emphasis added.) See also *In re Selcraig, supra* note 3 at 796, where the same court states that the public employer "need not initiate the [name-clearing] hearing process of its own accord." (2) In *Buxton v. City of Plant City, Fla,* 871 F.2d 1037, 1046 [11th Cir.1989], the Eleventh Circuit appears to require the dismissed non-tenured public employee to take the initiative in requesting a hearing, since the public employer need only provide the opportunity for a name-clearing hearing and give notice of the right to such a hearing. (3) First, Sixth and Tenth Circuit caselaw appears to be inconclusive. See *Rodriguez de Quinonez v. Perez,* 596 F.2d 486 [1st Cir.1978], cert. den., 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 [1979]; *Burkhart v. Randles,* 764 F.2d 1196, 1201 [6th Cir. 1985]; *McGhee v. Draper, supra.* (4) The Iowa Supreme Court, relying on Fifth Circuit jurisprudence in *Rosenstein, supra* note 3, holds that a discharged nontenured public employee *must request a name-clearing hearing to establish a § 1983 liberty interest claim.* *Bennett v. City of Redfield,* 446 N.W.2d 467, 471 n. 8 [Iowa 1989].

5. Absent controlling U.S. Supreme Court precedent, we follow the Tenth Circuit jurisprudence—the federal law in our circuit. *Phillips v. Williams,* Okl., 608 P.2d 1131, 1135 [1980].

ternative rule: (1) in open-and-shut cases of stigmatization, the § 1983 liberty interest claim of a nontenured public employee is indeed actionable without a demand for a name-clearing hearing, because it is the public employer's failure timely to afford such a hearing that constitutes a "deprivation" under the so-called "third tier" of claims enumerated in *Zinermon v. Burch;*[6] *but* (2) where, as here, the stigmatizing effect of a dismissal is, at best, debatable, I would follow the Fifth Circuit jurisprudence and hold that the discharged employee, not the public employer, must initiate the request for a name-clearing hearing, because the latter should not be deemed on notice that the employee has perceived the dismissal as stigmatizing him for future employability. My analysis appears to rest on an accurate assessment of evolving federal constitutional doctrine for actionability of those § 1983 claims which, as in this case, are sought to be rested on deprivation of a liberty interest in nontenured public employment.

A name-clearing hearing is necessary when the stigmatization involves imputation of illegal, dishonest or disloyal conduct that reflects on the employee's good name, honor or integrity, or will foreclose freedom to take advantage of other employment opportunity. On this record, any stigmatization claimed to result from the Authority chairman's after-dismissal statements to two news reporters which attribute to the discharged employee a violation of the Authority's "trust and confidence" because he had taped its members' telephone conversations and then played them for the staff's entertainment is, at best, questionable. An employee's termination for amusing himself and others by listening to taped conversations does not, in my opinion, indicate on its face a character flaw of a stigmatizing dimension.

---

**6.** *Supra* note 2.

**1.** In *Lindsey v. State ex rel. Dept. of Corrections,* 593 P.2d 1088 (Okla.1979), the court explained that "The government as employer is bound by the requirements of substantive due process." *Id.* 593 P.2d at 1092. *See also, Sipes v. United States,* 744 F.2d 1418, 1420 n. 3 (10th Cir.1984), and *Harris v. Blake,* 798 F.2d 419, 424–425 (10th

Although I join today's reversal, I rest my concurrence (a) on the rather doubtful nature of stigmatization claimed to have been visited on the plaintiff in the wake of his dismissal, coupled with (b) his failure timely to seek a name-clearing hearing before the *entire Authority.*

SUMMERS, Justice, concurring in part and dissenting in part.

I agree with the majority's treatment of the plaintiff's claims in parts I and III of the opinion, but reach a different result in examining the plaintiff's liberty interest claim as expressed in part II.

A mere defamation by a public official is not a deprivation of either a property or a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). A liberty interest is implicated when a defamation is coupled with action by the State which alters a right or status of a defamed plaintiff. *Id.* 424 U.S. at 710–712, 96 S.Ct. at 1164–66. A claim under *Paul* and its progeny is a procedural due process claim. *Id.* 424 U.S. at 710 n. 5, 96 S.Ct. at 1165 n. 5.[1]

A person's liberty interest is altered when a government employer forecloses a future opportunity to government employment in a manner that contravenes Due Process. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Two interests of a governmental employee are present under the liberty interest analysis of *Roth:* "(1) protection of his good name, reputation, honor and integrity, and (2) freedom to take advantage of other employment opportunities." *Walker v. United States,* 744 F.2d 67, 69 (10th Cir.1984). *See also, Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988), and *Development in the Law–Public Employ-*

---

Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987), wherein the court discussed substantive due process claims. No argument with supporting relevant authority is before the court involving a substantive due process claim. Thus, my analysis is limited to plaintiff's claims based on procedural due process as afforded by the Fourteenth Amendment.

*ment,* 97 Harv.L.Rev. 1611, 1788 (1984). In *Roth* the Court found that no liberty interest was implicated and distinguished the case from others with the following language:

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury....'

... The Court has held, for example, that a State, in regulating eligibility for a type of professional employment, cannot forclose a range of opportunities 'in a manner ... that contravene[s] ... Due Process,'

... and, specifically, in a manner that denies the right to a full prior hearing."

*Id.* 408 U.S. at 573–574, 92 S.Ct. at 2707–2708. (Citations ommitted).

Thus, a governmental employer may not terminate a person from its employment while attaching a stigma to the employee which denies the employee the opportunity to future government employment without affording that employee an opportunity to refute the stigmatizing allegations. *Paul v. Davis, supra,* and *Board of Regents v. Roth, supra.*

The Due Process claim is divided into two parts: 1. Showing the deprivation of a protected liberty or property interest; and 2. Showing the nature of process required. *Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). *See also,* Easterbrook, *Substance and Due Process,* 1982, Supreme Court Review, 85, 87 (1982). The plaintiff herein is required to show the three elements of his liberty interest claim: 1. That he was falsely stigmatized; 2. That the stigmatization was in connection with his discharge; and 3. That the charges were made public. *Lentsch v. Marshall,* 741 F.2d 301 (10th Cir.1984);

*Graham v. City of Oklahoma City, Oklahoma,* 859 F.2d 142, 145 n. 2 (10th Cir. 1988).

The second and third elements were treated by the trial judge in overruling the defendant's request for a directed verdict. The judge pointed out that testimony showed that one of the Commissioners "was the board spokesman, as the chairman on the night of the 18th, whenever he called the reporter" and that the chairman "made certain statements to the press" as to why the plaintiff was fired. (O.R. Vol. III at 743). Thus, the charges were made public in connection with the plaintiff's discharge.

The remaining issue is the first element: Was the plaintiff falsely stigmatized? The majority holds as a matter of law that he was not. I disagree. However, before explaining my disagreement, I am compelled to note an apparent inconsistency with the majority's treatment of this issue. It finds that the plaintiff's allegations of fact in the petition are sufficient to show the deprivation of a liberty interest, while holding that the plaintiff's evidence was insufficient as a matter of law to show a deprivation of a liberty interest. I find this approach to be inconsistent because, as I view the record, the plaintiff's evidence demonstrated the facts that were alleged.

The Tenth Circuit has found that certain communications are stigmatizing. For examples, see *Ewers v. Board of County Commissioners of Curry County,* 802 F.2d 1242, 1249 (10th Cir.1986), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988), [communication was stigmatizing under the test in *Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499 (10th Cir.1984) ] and *Walker v. United States,* 744 F.2d 67, 69 (10th Cir.1984), (plaintiff stigmatized by accusation that he lied on a government employment application). The Tenth Circuit has also found that certain communications were not stigmatizing due to the nature of the communication, and examples of such are listed in *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988).

In the present case the plaintiff attempted to show by expert testimony that the communication had a stigmatizing effect.[2] His expert appeared to indicate that the plaintiff had difficulty in finding employment due to the newspaper stories as well as due to the fact that he was fired. Mere termination is insufficient by itself to show a stigmatization. *See, Martin v. Unified School Dist. No. 434, Osage County,* 728 F.2d 453, 455–456 (10th Cir.1984), wherein the court said that proof that termination, by itself, made the plaintiff less attractive to potential employers was not enough to implicate a liberty interest. However, it would appear to me that with or without the expert witness testimony the communication in this case shows on its face to have stigmatized the plaintiff.

The representative of the Authority, it's chairman, on the night the plaintiff was fired made an unsolicited phone call to a reporter stating that the plaintiff was fired because his poor judgment included "violating any possible confidence by his taping of telephone conversations with board members without their knowledge and playing them back to staff for entertainment". The Authority, by its Chairman, also told another reporter that the plaintiff "betrayed the commissioner's trust when he taped phone conversations without their knowledge and played them back for the entertainment of the staff".

One author has said that: "Defamation is rather that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or *confidence* in which the plaintiff is held, or to excite adverse derogatory or unpleasant feelings or opinions against him." *Prosser and Keeton on The Law of Torts,* 773 (W. Keeton 5th ed. 1984) (Emphasis added). *See also, Kimmerle v. New York Evening Journal, Inc.,* 262 N.Y. 99, 186 N.E. 217, 218 (1933) wherein the court explained that reputation is injured by words which deprive the plaintiff of the confidence of others.

The allegedly false fact, that the plaintiff was secretly taping his supervisors for the entertainment of the staff must, in the case before us, be sufficient as a matter of law to show that it deprived the plaintiff of the confidence of others. Indeed, the very words of the chairman were that the Authority no longer had confidence in the plaintiff based on the taping. This analysis of general defamation principles is in accord with a "stigmatization" analysis. A stigmatization occurs when the employer "call[s] into question plaintiff's good name, reputation, honor, or integrity." *Bailey v. Kirk,* 777 F.2d 567, 573 (10th Cir.1985). Thus, the Authority's communication that Blanton secretly taped his supervisors for the amusement of staff calls into question Blanton's good name, honor, reputation, or integrity. The truthfulness or untruthfulness of that communication was properly in the province of the jury.

In *Miller v. City of Mission, Kansas,* 705 F.2d 368, 374 (10th Cir.1983), the court said:

> "Given the nature of the reasons for Miller's terminmation, the jury could have reasonably inferred that the widespread public distribution of the allegations injured his standing in the community and severely impeded his ability to find other employment.
>
> … 'The jury has the *exclusive* function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" *Id.* 705 F.2d at 374.

Similar reasoning is found in *Johnson v. Rogers,* 621 F.2d 300 (8th Cir.1980), wherein the court explained that the jury could

---

**2.** An accusation of employee insubordination *not* stigmatizing on its face is sufficient to survive a defendant's motion for summary judgment if the plaintiff can show *by evidence* that the accusation had a stigmatizing effect. *Conaway v. Smith,* 853 F.2d at 794–795. It has, of course, been long recognized that issues of fact are to be determined by a jury under appropriate instructions from the court. *Diederich v. American News Co.,* 128 F.2d 144 (10th Cir. 1942). Thus, even if the accusation concerning the taped phone conversations was not stigmatizing as suggested by the majority, the plaintiff's claim is proper for a jury because he introduced evidence of a stigmatizing effect from the communication.

have reasonably concluded that the plaintiff was denied a liberty interest under the facts of the case. *See, McGhee v. Draper,* 564 F.2d 902, 910 (10th Cir.1977), wherein the court said that under the facts of that case: "We agree that the claim of involvement of a liberty interest could not be rejected by a directed verdict ruling." *See also, McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981).

I would hold that the plaintiff's liberty interest claim was properly submitted to the jury. Since improper grounds for recovery were also submitted to the jury, i.e. the property interest claim and the good-faith employment claim, and on the jury's verdict it is impossible to sever recovery on the proper from recovery on the improper, I would remand this case for retrial on the liberty interest[3] issue alone. *Guinn v. Church of Christ of Collinsville,* 775 P.2d 766 (Okla.1989).

I am authorized to state that Justice ALMA WILSON and Justice KAUGER join in these views.

---

**3.** Because the majority appears to deal only with the issue of whether or not a stigmatization occurred as a matter of law, I do not address the second prong of a liberty interest analysis, i.e., the nature of process that is due. *But see, Zinermon v. Burch,* — U.S. —, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).